UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE HELLERSTEIN

------------------------------------------------------------x

MARIA DE LOURDES PARRA MARIN, on behalf
of herself and all other persons similarly situated,

                Plaintiff,

                -against-

DAVE & BUSTER'S, INC. and
DAVE & BUSTER'S ENTERTAINMENT, INC.,

                Defendants.

------------------------------------------------------------x

**CLASS ACTION COMPLAINT**

Case No. 15-CV-3608

## CLASS ACTION COMPLAINT

Plaintiff, Maria De Lourdes Parra Marin, on behalf of herself and all other persons similarly situated, by her undersigned attorneys, for her Class Action Complaint against Defendants Dave & Buster's, Inc. and Dave & Buster's Entertainment, Inc., alleges upon information and belief as follows:

### INTRODUCTION

1. This is a class action by Plaintiff against Defendants, jointly and severally, under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c, and is brought under ERISA to obtain appropriate equitable relief for acts of discrimination under ERISA § 510, 29 U.S.C. § 1140, and for such further equitable relief as may be appropriate.

### JURISDICTION & VENUE

2. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3. Venue of this action lies in the district court for the Southern District of New York, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). The violations and breaches alleged took place within this district and Defendants do business in this district.

## THE PARTIES

4. Plaintiff, Maria De Lourdes Parra Marin ("Plaintiff" or "Ms. Marin"), resides in the City of New York, County of Queens, and State of New York.

5. Defendant Dave & Buster's, Inc., ("Dave & Buster's Inc.") is a corporation incorporated in the State of Missouri with a principal place of business located at 2481 Manana Drive, Dallas, Texas 75220.

6. Defendant Dave & Buster's Entertainment, Inc., ("Dave & Buster's Entertainment") is a corporation incorporated in the State of Delaware with a principal place of business located at 2481 Manana Drive, Dallas, Texas 75220 and is the parent company of Dave & Buster's (collectively "Defendants" or "Dave & Buster's").

## CLASS ACTION ALLEGATIONS

7. This class action is brought pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of a class of persons currently or formerly employed by Dave & Buster's (i) who were participants in an ERISA health insurance plan sponsored by Dave & Buster's (the "Dave & Buster's Plan"); and (ii) whose hours were involuntarily reduced by Dave & Buster's from June 1, 2013 to the present, after the enactment of the Patient Protection and Affordable Care Act ("ACA"), which reductions resulted in either the loss of their insurance coverage under the Dave and Buster's Plan or being offered only inferior health insurance (the "class").

8. The class is so numerous that joinder of all members is impracticable. The class consists of approximately 10,000 persons as estimated by the number of hourly employees employed in Dave & Buster's 72 stores in the United States.

9. Questions of law or fact are common to all the members of the class. The common questions of law or fact include, but are not limited to the following:

(a) Whether Dave & Buster's acted to deny Plaintiff and the class continued coverage under the Dave & Buster's Plan;

(b) Whether Dave & Buster's "right sized" its work force in 2013 to reduce the number of full-time employees;

(c) Whether Dave & Buster's "right sized" its work force in 2013 for the purpose, in whole or part, of avoiding the costs associated with providing health insurance to its full-time employees in compliance with the requirements of the ACA;

(d) Whether Dave & Buster's intentionally interfered with the rights of Plaintiff and the class under the Dave & Buster's Plan.

10. The claims of Plaintiff are typical of the claims of the class. She was, and is, employed by Dave & Buster's. She was subjected to a nationwide effort by Defendants in 2013 to "right size" the number of full-time employees, thus permitting Defendants to avoid the costs associated with the ACA. As a result, like other class members, Plaintiff had her work hours cut, and was denied continued coverage under the Dave & Buster's Plan.

11. Plaintiff will assure the adequate representation of all members of the class, and has no conflict with class members in the maintenance of this class action. She has had no relationship with Dave & Buster's except as an employee. Her interests in this action are antagonistic to the interests of Dave & Buster's, and she will vigorously pursue the claims of the class. Plaintiff has no interest antagonistic to or in conflict with the interests of the class.

12. Plaintiff has retained counsel experienced in the prosecution of class actions in general and ERISA litigation in particular.

13. Dave & Buster's has acted on grounds generally applicable to the class so that final injunctive and declaratory relief is appropriate with respect to the class.

14. The calculation of the equitable restitution to be awarded to Plaintiff and the class is formulaic and is capable of computation by means of objective standards.

15. No undue difficulties are anticipated to result from the prosecution of this suit as a class action.

16. Plaintiff will seek to identify all class members through such investigation and discovery as may be appropriate. Plaintiff will provide to the class such notice of this action as the Court may direct.

## FACTUAL ALLEGATIONS

17. Dave & Buster's currently owns and operates 72 stores ("Stores") in 30 states in the United States that combine dining and an assortment of entertainment attractions, including playing games and watching live sports and other televised events.

18. In or about August, 2006, Ms. Marin was hired by Dave & Buster's as a full-time employee in its kitchen staff at Dave & Buster's Store # 50 located at 234 West 42nd St., 3rd Floor, New York, New York 10036 ("Times Square Store").

19. For seven years, from in or about 2006 through May 2013, Ms. Marin worked approximately 30-45 hours a week at the Dave & Buster's Times Square Store at $15 an hour for a weekly pay in the range of $450-$600.

20. As a full-time employee, Ms. Marin, like other full-time employees at the Times Square Store, was a participant in, and received health insurance coverage under, the Dave & Buster's Plan.

21.     Upon information and belief, prior to June 2013, Dave & Buster's employed in excess of 100 full-time employees at the Times Square Store who were afforded coverage under the Dave & Buster's Plan.

22.     On or about March 23, 2010, the ACA became law and required that insurance coverage provided by covered employers must be affordable and provide a minimum value, within the meaning of the law, or the employers may liable for a penalty. These requirements became effective for employers with over 100 full-time employees on January 1, 2015.

23.     The ACA required additional changes to the insurance provided by employers, including but limited to, requiring that such insurance plans must:

    a. Provide dependent coverage for children up to age 26;

    b. Not place lifetime limits on the dollar value of coverage and prohibit insurers from rescinding coverage, except in cases of fraud;

    c. Not exclude coverage for pre-existing condition exclusions;

    d. Limit any waiting periods for coverage to 90 days;

    e. Spend at least 80% or 85% of premium dollars on medical care, and be subject to review of premium rate increases; and

    f. Cover certain preventive services without any cost-sharing for the enrollee when delivered by in-network providers (services such as blood pressure, diabetes and cholesterol tests; many cancer screenings; routine vaccinations; pre-natal care; and regular wellness visits for infants and children).

24. Upon information and belief, Dave & Buster's designed and implemented a nationwide "effort in 2013 intended to 'right-size' the number of full-time and part-time employees," so as to avoid the costs associated with providing insurance that complied with the requirements of the ACA.

25. In or about June 2013, Dave & Buster's scheduled two meetings, one for the afternoon and one for the evening shift, which all Dave & Buster's employees at the Times Square Store, numbering in excess of 100, were required to attend.

26. At the June 2013 meeting attended by Ms. Marin and approximately 60 other employees, the Times Square Store General Manager, Chris Waugaman, accompanied by the Assistant General Manager, JD Roewer, announced that compliance with the ACA would cost Dave & Buster's as much as "two million dollars," and that, to avoid that cost, Dave & Buster's planned to reduce the number of the full-time employees at the Times Square Store to approximately 40.

27. Upon information and belief, similar meetings were held at many other Dave & Buster's locations around the country.

28. On or about June 9, 2013, a former employee at another Dave & Buster's location, posted to Dave & Buster's' Facebook page that "in a preemptive strike against Obamacare, Dave and Buster's cut the vast majority of their employees down to part-time last week. . . . . They called store meetings and told everyone they were losing hours (pay) and health insurance due to Obamacare . . ."

29. Beginning in or about June 2013, Dave & Buster's, in accordance with its attempt to "right-size" the number of full-time employees, reduced Ms. Marin's hours to under 30 hours per week.

30. In or about August 2013, Margo Manning, Senior Vice President of Human Resources for Dave & Buster's, when questioned about the reduction in full-time employees, stated: "We take all decisions that affect our team members' hours seriously. Like many companies, D&B is in the process of adapting to upcoming changes associated with health care reform." Karen Robinson-Jacobs, *Restaurateurs, wary of health care costs, eye workers' hours*, THE DALLAS MORNING NEWS, Aug. 26, 2013, http://www.dallasnews.com/business/restaurants-hotels/20130826-restaurateurs-wary-of-health-care-costs-eye-workers-hours.ece.

31. In August 2013, in accordance with Dave & Buster's effort to "right size" the number of full-time employees who participated in the Dave & Buster's Plan, Ms. Marin's supervisors further reduced her hours to less than 20 hours each week.

32. During the period November 2013 through February 2014, with the exception of two weeks, Ms. Marin's hours never equaled or exceeded 30 hours per week.

33. Given the reduction in Ms. Marin's average hours from approximately 30-40 hours to approximately 10-25 hours per week, Ms. Marin's weekly pay, from August 2013 through February 2014, dropped from a range of approximately $450-600 to a range of approximately $150-375 a week.

34. By letter dated March 10, 2014, Dave & Buster's officially notified Ms. Marin that she no longer qualified for coverage under Dave & Buster's Plan because Dave & Buster's required its workers "to average at least 28 hours per week to be classified as a full-time employee and to be eligible for full-time medical and vision benefit plans," and Ms. Marin's average hours worked from September 1, 2013 through February 28, 2014, were "17.43 hours per week."

35. Dave & Buster's March 10, 2014 letter further advised Ms. Marin that her status would be changed to part-time, and that her current coverage in the Dave & Buster's Plan for full-time employees would terminate on March 31, 2014.

36. On or before March 31, 2014, Dave & Buster's terminated Ms. Marin's medical insurance coverage under the Dave & Buster's Plan.

37. In a June 23, 2014 letter to Ms. Marin's attorney, Jay Tobin, the Senior Vice President, General Counsel and Secretary for Dave & Buster's, explained Ms. Marin's reduction in hours as part of a nationwide "program in 2013 intended to right-size the number of full-time and part-time employees in [its] stores."

38. Upon information and belief, reducing the work hours of Plaintiff and the class to convert them to part-time work status significantly reduces their pay and prevents them from being able to afford health insurance, to the extent it is offered to part-time employees.

39. In a Form S-1 filed by Defendants with the Securities and Exchange Commission on or about September 29, 2014, which became effective on October 9, 2014, Dave & Buster's disclosed its concern about the ACA's negative impact on its business, and reported the following:

> The Patient Protection and Affordable Care Act, as amended by the Health Care and Education Reconciliation Act of 2010 (collectively, the "Patient Act"), as well as other healthcare reform legislation being considered by Congress and state legislatures, may have an adverse effect on our business. Although the Patient Act does not mandate that employers offer health insurance to all employees who are eligible under the legislation, beginning in 2015, penalties will be assessed on employers who do not offer health insurance that meets certain affordability or benefit coverage requirements. *Providing health insurance benefits to employees that are more extensive than the health insurance benefits we currently provide and to a potentially larger proportion of our employees*, or the payment of penalties if the specified level of coverage is not provided at an affordable cost to employees, *will increase our expenses*. ... We believe our plans

8

will meet these requirements, however, providing health insurance benefits to a potentially larger proportion of our employees, or the payment of penalties if the specified level of coverage is not provided at an affordable cost to employees, could have a significant, negative impact on our business. (emphasis added)

40. On or about April 7, 2015, Dave & Buster's filed its Form 10-K for the year ended February 1, 2015, reported a decrease in its payroll, stating:

Operating payroll and benefits increased by $25,537, or 17.0%, to $175,709 in fiscal 2014 compared to $150,172 in fiscal 2013, primarily due to new store openings. The total cost of operating payroll and benefits, as a percentage of total revenues, decreased 10 basis points to 23.5% in fiscal 2014 compared to 23.6% for fiscal 2013. The decrease in operating payroll and benefits, as a percentage of revenues, was driven primarily by decreased hourly and management labor costs offset by increased incentive compensation expense and unfavorable health insurance claims experience.

41. According to Dave & Buster's' Form 10-K for the year ended February 1, 2015, "A typical store employs approximately 140 hourly employees many of whom work part-time."

42. As result of the significant reduction in her hours, since on or about March 31, 2014 through the present, Ms. Marin has been unable to participate in the Dave & Buster's Plan.

## CLAIM FOR RELIEF

43. Plaintiff repeats and re-alleges the allegations in paragraphs 1- 42 as if fully set forth herein.

44. At all times relevant, the Dave & Buster's Plan was an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002.

45. At all relevant times, Plaintiff and the class were participants in the Dave & Buster's Plan.

9

46. At all relevant times, Plaintiff and the class were qualified for their positions at Dave & Buster's.

47. Beginning in or about June 2013, Defendants, pursuant to a nationwide effort to "right size" the number of full-time employees who participated in the Dave & Buster's Plan, reduced work hours for Plaintiff and the class to under 30 hours per week with the intent and the purpose, in whole or part, of interfering with their attainment of their rights as participants under the Dave & Buster's Plan.

48. As a result of the reduction of employee hours in accordance with the nationwide effort to "right size" the number of full-time employees who participated in the Dave & Buster's Plan, Plaintiff and the class lost the health insurance benefits they had under the Dave & Buster's Plan.

49. As a result of the reduction of employee hours in accordance with the nationwide effort to "right size" the number of full- time employees who participated in the Dave & Buster's Plan, Plaintiff and the class lost wages and benefits.

50. By converting Plaintiff and the class from full-time to part-time status, Defendants interfered with the attainment of their rights to participate in the Dave & Buster's Plan in violation of § 510 of ERISA, 29 U.S.C. § 1140.

51. Plaintiff and the class have suffered a loss of health insurance benefits and seek equitable restitution as a result of Defendants' violation of § 510 of ERISA, 29 U.S.C. § 1140.

52. Plaintiff and the class have suffered a loss of wages and benefits due to the reduction in their hours, and seek equitable restitution as a result of Defendants' violation of § 510 of ERISA, 29 U.S.C. § 1140.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

A. Ordering Defendants to immediately reinstate Plaintiff and the class to full-time positions and to restore their rights of participation in a Dave & Buster's Plan that complies with the requirements of the ACA;

B. Awarding Plaintiff and the class equitable restitution to make Plaintiff and the class whole for the loss of wages and benefits, with interest, from the date of the reduction of their hours and benefits;

C. Awarding Plaintiff and the class equitable restitution to make them whole for the costs of health insurance they secured to replace the health insurance Dave and Buster's denied them and to reimburse them for any out of pocket costs for medical claims that would have been paid in whole or in part as if they and their beneficiaries had continued to participate in the Dave & Buster's Plan.

D. Awarding Plaintiff reasonable attorney's fee and costs pursuant to 29 U.S.C. 1132(g);

E. Awarding Plaintiff such other further and different relief as may be just and proper in the circumstances.

Dated: New York, New York
May 8, 2015

By: /s/ Judith L. Spanier
Judith L. Spanier, Esq.
Natalie S. Marcus, Esq.
Abbey Spanier, LLP
212 East 39th Street
New York, New York 10016
(212) 889-3700
jspanier@abbeyspanier.com

Bradford D. Conover, Esq.
Molly Smithsimon, Esq.
Conover Law Offices
345 Seventh Avenue, 21st Floor

New York, New York 10001
(212) 588-9080
brad@conoverlaw.com

William D. Frumkin, Esq.
Elizabeth E. Hunter, Esq.
Frumkin & Hunter LLP
1025 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 468-6096
wrfrumkin@frumkinhunter.com

*Attorneys for Plaintiff*