UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA de LOURDES PARRA MARIN, on behalf of herself and all other persons similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>DAVE & BUSTER'S, INC., and DAVE & BUSTER'S ENTERTAINMENT, INC.,<br><br>        Defendants. | Case No. 15-CV-3608 (AKH) |

# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS................................................................................................. 5

ARGUMENT ..................................................................................................................... 9

I.     The Complaint Fails to Plead Facts Showing Interference with Any Benefit
       Protected by ERISA. ............................................................................................ 10

       A.     Neither ERISA nor the ACA Grants a Right to Employer-Provided
              Health Coverage .................................................................................. 11

       B.     ERISA Section 510 Does Not Provide a Cause of Action for
              Interference with Benefits Yet to Be Created ........................................ 13

       C.     The Complaint Fails to State a Claim that D&B Intended to
              Interfere with Employees' Then-Existing Plan Benefits.......................... 16

II.    The Complaint Fails to Allege that Plaintiff Was Targeted for the Alleged
       Discrimination. ..................................................................................................... 18

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andes* v. *Ford Motor Co.*,
    70 F.3d 1332 (D.C. Cir. 1995) .......................................................................... 2, 18, 22

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 9

*Ass'n of Am. Physicians & Surgeons, Inc.* v. *Sebelius*,
    901 F. Supp. 2d 19 (D.D.C. 2012) ............................................................................. 12

*Bang* v. *IBM Corp.*,
    600 F. Supp. 2d 430 (E.D.N.Y. 2009) ........................................................................ 21

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 19

*Berube* v. *Great Atlantic & Pacific Tea Co.*,
    348 F. App'x 684 (2d Cir. Oct. 15, 2009) .............................................................. 1, 10

*Clapp* v. *Greene*,
    743 F. Supp. 273 (S.D.N.Y. 1990) ............................................................................ 17

*Dister* v. *Continental Group, Inc.*,
    859 F.2d 1108 (2d Cir. 1988) ......................................................................... 1, 11, 16

*Gavalik* v. *Continental Can Co.*,
    812 F.2d 834 (3d Cir. 1987) ..................................................................................... 22

*Haight* v. *NYU Langone Med. Ctr., Inc.*,
    No. 13 Civ. 4993, 2014 WL 2933190 (S.D.N.Y. June 27, 2014) .............................. 17

*Inter-Modal Rail Emps. Ass'n* v. *Atchison, Topeka, and Santa Fe Ry. Co.*,
    520 U.S. 510 (1997) ............................................................................................ 15, 16

*Kelly* v. *Chase Manhattan Bank*,
    717 F. Supp. 227 (S.D.N.Y. 1989) .................................................................. 1, 13, 15

*Nat'l Fed'n Indep. Bus.* v. *Sebelius*,
    132 S. Ct. 2566 (2012) ............................................................................................. 13

*Niblo* v. *UBS Global Asset Mgmt. (Americas) Inc.*,
    No. 11 Civ. 4447, 2012 WL 995276 (S.D.N.Y. Mar. 21, 2012) ................................ 14

*Owens* v. *Storehouse, Inc.*,
  984 F.2d 394 (11th Cir. 1993) ........................................................................ 12

*Shaw* v. *Delta Air Lines, Inc.*,
  463 U.S. 85 (1983) ..................................................................................... 3, 12

*Stewart* v. *NYNEX Corp.*,
  78 F. Supp. 2d 172 (S.D.N.Y. 1999) ............................................................. 11

*Trujillo* v. *PacifiCorp*,
  524 F.3d 1149 (10th Cir. 2008) ..................................................................... 21

*Weinberg* v. *Mizuho Capital Mkts. Corp.*,
  No. 03 Civ. 2612, 2003 WL 22462022 (S.D.N.Y. Oct. 30, 2003) .............. 14

*Yoran* v. *Bronx-Lebanon Hosp. Center*,
  No. 96 Civ. 2179, 1999 WL 378350 (S.D.N.Y. June 10, 1999) ................. 14

*Young* v. *Pa. Rural Elec. Ass'n*,
  80 F. App'x 785 (3d Cir. Nov. 17, 2003) ..................................................... 15

**STATUTES**

29 U.S.C. § 1025 ................................................................................................ 10

29 U.S.C. § 1031(a)(1) ...................................................................................... 10

29 U.S.C. § 1140 (West 2015) ........................................................................... 10

29 U.S.C. § 1140, *available at* uscode.house.gov .............................................. 10

29 U.S.C. § 1140 (LEXIS 2015) ........................................................................ 10

29 U.S.C. § 1185d ............................................................................................... 12

42 U.S.C. § 300gg-3 ........................................................................................... 12

42 U.S.C. § 300gg-5 ........................................................................................... 12

42 U.S.C. § 300gg-9 ........................................................................................... 12

Affordable Care Act,
  42 U.S.C. § 18001 (2010) .................................................................... *passim*

Employee Retirement Income Security Act of 1974,
  29 U.S.C. § 1140;
  Pub. L. No. 93-406, 88 Stat. 829 ......................................................... *passim*

Public Health Service Act, Title XXVII, Part A,
   42 U.S.C. § 300gg *et seq.* ............................................................................................. 12

Welfare and Pension Plans Disclosure Act,
   29 U.S.C. 301 et seq. ..................................................................................................... 10

**OTHER AUTHORITIES**

26 I.R.C. § 4980H ................................................................................................................. 13

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 5, 14

Defendants Dave & Buster's, Inc. and Dave & Buster's Entertainment, Inc. (collectively "D&B" or "Defendants") respectfully submit this Memorandum of Law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Class Action Complaint, dated May 8, 2015 (the "Complaint"), against both Defendants, with prejudice.

## PRELIMINARY STATEMENT

This is a putative class action by a D&B employee, who claims that the 2013 reduction of her work hours, and those of a putative class of former and other current D&B employees, violated section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"). Section 510 makes it unlawful "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under" an employee benefit plan or ERISA. An essential element of a claim under section 510 is a showing "that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510," *Dister* v. *Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988). Thus, "[t]o succeed on a Section 510 claim, a plaintiff must demonstrate the employer specifically intended to interfere with benefits," *Berube* v. *Great Atlantic & Pacific Tea Co.*, 348 F. App'x 684, 687 (2d Cir. Oct. 15, 2009) (citing *Ingersoll-Rand Co.* v. *McClendon,* 498 U.S. 133, 140 (1990)), and such benefits must be *existing*, not merely contemplated, *see Kelly* v. *Chase Manhattan Bank*, 717 F. Supp. 227, 232 (S.D.N.Y. 1989) (holding that an employee terminated when his employer had "full knowledge that an early retirement plan would be implemented," but had not yet implemented the plan, was insufficient to "raise an inference of discrimination" because the employee was seeking "a benefit yet to be created"). In

addition, a plaintiff must show that the adverse employment action was "discriminatory" — *i.e.*, "targeted" at specific employees based on "some ERISA-related characteristic special to" them — as in the case of an employee or group of employees who are targeted for discharge because of a chronic medical condition, or because their pensions are about to vest, while those without extraordinary health costs or whose pensions had already vested remain employed. *Andes* v. *Ford Motor Co.*, 70 F.3d 1332, 1338 (D.C. Cir. 1995).

The Complaint fails on both counts.

The Complaint contains a single claim for purported "acts of discrimination" under section 510, on behalf of plaintiff and a class of current and former D&B employees who were participants in an ERISA health insurance plan sponsored by D&B, and whose hours were involuntarily reduced by D&B from June 1, 2013 to the present. The Complaint alleges that the challenged reduction in work hours in 2013 was intended to avoid the anticipated costs associated with providing insurance that complied with the requirements of the Affordable Care Act ("ACA"), which were to take effect on January 1, 2015.

Even taking the allegations of the Complaint at face value and accepting them as true, they fall far short of identifying an ERISA protected right with which defendants allegedly interfered. Thus, although the alleged purpose of the reduction in hours was to avoid anticipated *future* costs associated with providing ACA-compliant insurance beginning in 2015, plaintiff complains only of the loss of benefits in 2013, without providing *any* alleged facts suggesting that interference with *those, then-existing*, benefits was any part of defendants' purpose or intent. Similarly, the Complaint seeks an Order

2

requiring defendants to "restore" a supposed "right" of plaintiff and members of the putative class to "participation in a Dave & Buster's Plan that complies with the requirements of the ACA" — without alleging that they *ever had* a right to participate in an ACA-compliant plan, and despite acknowledging that defendants are under no legal compulsion even to adopt such a plan, but may instead choose to be "liable for a penalty." The law provides no right to participate in an ACA-compliant health plan, to either full- or part-time employees.

It is therefore not clear what purported "rights" plaintiff claims to have been the object of purposeful interference by defendants: A statutory right to ACA-compliant coverage? Rights to benefits under an ACA-compliant plan that did not exist at the time of the reduction in hours, *if* D&B chose to adopt one thereafter? Or benefits that plaintiff and putative class members had in 2013 but allegedly lost "as a result" of the reduction in hours?

But it does not matter for purposes of this motion which of these alternative theories plaintiff chooses to pursue. The Complaint does not state a claim under any of them.

*First*, the Complaint cannot state a claim that D&B took any action for the purpose of interfering with the attainment of any statutory right, because there is no right under either ERISA or the ACA to ACA-compliant health coverage. "ERISA does not mandate that employers provide any particular benefits." *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983). Nor does the ACA itself provide employees with a substantive right to health insurance coverage or import such a right into ERISA. Rather, as the Complaint acknowledges, the ACA gives employers a choice — the so-called "Play or

Pay Mandate" — either to provide ACA-qualifying health insurance to their full-time employees or to pay a tax penalty if they choose not to do so.

*Second*, to the extent the Complaint seeks to impose liability based on an alleged deprivation of coverage under an ACA-compliant health plan that did not exist at the time of the challenged reduction, such a claim also fails as a matter of law. As courts in this Circuit and elsewhere have held, an employee has no entitlement, and therefore no right under section 510, to benefits that have yet to be created. To permit such claims would subject employers to charges of discrimination by recently-terminated employees whenever a benefit plan was subsequently implemented — all in the name of protecting supposed "rights" to which the terminated employees were *never entitled*, and which they were never promised.

*Third*, the Complaint does not state a claim for interference with any right to benefits that existed under the D&B healthcare plan at the time of the challenged action in 2013, because it does not plead any facts supporting the key element of such a claim — specific intent to interfere with such rights. Nowhere does the Complaint allege that D&B acted with the specific intent to deprive plaintiff or other employees of benefits under the then-existing plan. To the contrary, the Complaint purports to allege only that D&B restructured its workforce in order to avoid the anticipated costs of providing ACA-compliant health insurance coverage that, depending upon the company's election, may or may not have come to exist in the future.

*Finally*, even if the Complaint had adequately pled interference with a protected right and a specific intent to do so — and it does not — it still does not state a claim, because it does not allege facts showing that plaintiff (or any putative class member) was

4

"targeted" for adverse employment action based on any ERISA-related characteristic distinguishing her from employees whose hours were not reduced. Indeed, the Complaint is silent as to the intent behind the selection of employees for reduced hours. Without such allegations, the Complaint fails as a matter of law.

For these reasons, as amplified below, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

Defendant Dave & Buster's, Inc. owns and operates 72 stores in 30 states in the United States, providing dining and an assortment of entertainment activities, including playing games and watching live sports and other televised events. (¶ 17.) Dave & Buster's Entertainment, Inc. is the parent of Dave & Buster's, Inc. (¶ 6.)

Plaintiff Maria De Lourdes Parra Marin is a current D&B employee and a member of the kitchen staff at the store located in Times Square. (¶ 18.) From about 2006 through May 2013, plaintiff worked approximately 30-45 hours a week for weekly pay in the range of $450-$600, and was a participant in an ERISA health insurance plan sponsored by D&B. (¶¶ 19-20.)

The gravamen of the Complaint is that plaintiff's work hours were reduced in 2013, in order to avoid anticipated future costs associated with providing insurance that would comply with the requirements of the ACA, beginning in 2015 — although no such plan was in effect at the time her hours were reduced, and the Complaint acknowledges that D&B was not legally required to adopt such a plan, even in 2015 (¶ 22). The Complaint also alleges that plaintiff lost healthcare benefits that she "had" in 2013 "as a

---

[1]    As required on a motion to dismiss under Rule 12(b)(6), the facts recited are drawn from the well-pled allegations in the Complaint. Defendants do not concede the truth of any of plaintiff's allegations.

result" of the reduction in hours (¶ 48) — but does not plead any facts showing that interference with *those rights* was any part of D&B's purpose or intent.

Specifically, as alleged in the Complaint, the ACA became law in 2010, requiring that, effective January 1, 2015, employers pay a tax penalty if they employ more than a specified number of full-time employees and fail to provide health insurance that is "affordable and provide[s] a minimum value, within the meaning of the law."  (¶ 22.) The Complaint acknowledges that the employer has no affirmative obligation under the ACA:  the employer chooses whether to provide fully compliant insurance, less-than-compliant insurance, or no insurance at all.  (*Id.*)  This concession leaves a wide and unbridged gap between the theory of plaintiff's case and the facts alleged to support it. The premise of plaintiff's claim is that D&B "designed and implemented a nationwide 'effort in 2013 intended to "right-size" the number of full-time and part-time employees,' so as to avoid the costs associated with providing insurance that complied with the requirements of the ACA."  (¶ 24.)  Yet, the Complaint does not and cannot allege any facts showing that plaintiff ever had any *right* to participate in an ACA-compliant plan sponsored by D&B.

None of the remaining allegations of the Complaint cures this fatal defect. The Complaint references a number of statements allegedly made by D&B and others about steps the Company might take to reduce costs  associated with the ACA, including that compliance with the ACA would cost D&B "as much as two million dollars," and that, to avoid that cost, D&B planned to reduce the number of the full-time employees at the Times Square Store (¶¶ 25-26); that "[p]roviding health insurance benefits to employees that are more extensive than the health insurance benefits we currently provide and to a

6

potentially larger proportion of our employees, or the payment of penalties if the specified level of coverage is not provided at an affordable cost to employees, will increase our expenses" (¶ 39); that D&B "'cut the vast majority of their employees down to part-time last week . . . and told everyone they were losing hours (pay) and health insurance due to Obamacare'" (¶ 28); and that "D&B is in the process of adapting to upcoming changes associated with health care reform" (¶ 30).  But nowhere does the Complaint link these comments to interference by D&B with any existing ERISA protected employee right.

The Complaint's allegations about the plaintiff's particular employment circumstance similarly fail to identify any ERISA protected right interfered with by D&B.  Thus, the Complaint alleges that, beginning in June 2013, allegedly "in accordance with its attempt to 'right-size' the number of full-time employees," D&B reduced plaintiff's hours "to under 30 hours per week." (¶ 29.)  In August 2013, again allegedly "in accordance with [D&B's] effort to 'right size' the number of full-time employees who participated in the [D&B] Plan," plaintiff's "supervisors further reduced her hours to less than 20 hours each week." (¶ 31.)  According to the Complaint, during the period November 2013 through February 2014, with the exception of two weeks, plaintiff's hours never equaled or exceeded 30 hours per week, and her weekly pay declined substantially from August 2013 through February 2014. (¶¶ 32-33.)

According to the Complaint, on March 10, 2014, D&B notified plaintiff "that she no longer qualified for coverage under [D&B's] Plan because [D&B] required its workers 'to average at least 28 hours per week to be classified as a full-time employee and to be eligible for full-time medical and vision benefit plans,'" and plaintiff's "average hours

7

worked from September 1, 2013 through February 28, 2014, were '17.43 hours per week.'" (¶ 34.) D&B further advised plaintiff "that her status would be changed to part-time, and that her current coverage in the [D&B] Plan for full-time employees would terminate on March 31, 2014." (¶ 35.) On or before March 31, 2014, D&B terminated plaintiff's medical insurance coverage under the D&B Plan. (¶ 36.) Although the Complaint acknowledges that health coverage "is offered to part-time employees," it alleges, "[u]pon information and belief," that "reducing the hours of Plaintiff and the class to convert them to part-time work status significantly reduces their pay and prevents them from being able to afford" such health insurance (¶ 38), and that, "[a]s result of the significant reduction in her hours, since on or about March 31, 2014 through the present," plaintiff "has been unable to participate in the [D&B] Plan," (¶ 42).

Notwithstanding the deficiency of the foregoing allegations, plaintiff asserts a single claim for "acts of discrimination" under ERISA section 510 (¶ 1), on behalf of herself and a putative nationwide class of current and former D&B employees "(i) who were participants in an ERISA health insurance plan sponsored by [D&B]; and (ii) whose hours were involuntarily reduced by [D&B] from June 1, 2013 to the present, after the enactment of" the ACA, "which reductions resulted in either the loss of their insurance coverage under the [D&B] Plan or being offered only inferior health insurance." (¶ 7.) In the Claim for Relief, the Complaint asserts that the alleged 2013 reduction of work hours for plaintiff and members of the putative class was motivated by "the intent and the purpose, in whole or in part, of interfering with their attainment of rights as participants under the [D&B] Plan"; and that, "[a]s a result, . . . Plaintiff and the class lost the health insurance benefits they had under the [D&B] Plan." (¶¶ 47-48.)

While complaining only of the alleged loss of benefits that plaintiff and putative class members "had under the [D&B] Plan" as it existed in 2013, the Complaint seeks an Order requiring defendants "to immediately reinstate Plaintiff and the class to full-time positions and *to restore their rights of participation in a Dave & Buster's Plan that complies with the requirements of the ACA*" (Cplt. at 11 (emphasis added)) —"rights" that plaintiff and members of the putative class do not (and cannot) allege they ever had. The Complaint also seeks "equitable restitution" to "make Plaintiff and the class whole for the loss of wages and benefits, with interest" and "to make them whole for the costs of health insurance they secured to replace the health insurance [D&B] denied them and to reimburse them for any out of pocket costs for medical claims that would have been paid in whole or in part as if they and their beneficiaries had continued to participate in the [D&B] Plan." (*Id.*)

As we now show, the allegations of the Complaint fail to state a claim under ERISA section 510.  The Complaint should be dismissed.

## ARGUMENT

In evaluating a motion to dismiss, the Court must accept "well-pleaded factual allegations" as true, but it should not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

Here, plaintiff asserts a single claim "for acts of discrimination" under ERISA section 510, which provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit] plan, [title I of ERISA, "Protection of Employee Benefit Rights"], or the Welfare and Pension Plans Disclosure Act.

9

29 U.S.C. § 1140.[2]  Thus, to survive a motion to dismiss, the Complaint must plead facts

showing that defendants reduced plaintiff's hours "for the purpose of interfering with the

attainment" of a benefit protected by ERISA.[3]  In addition, it must plead facts indicating

that the adverse employment action was "discriminatory" — that the plaintiff was

"targeted" for adverse employment action based on some ERISA-related characteristic

not shared by employees whose employment status remained the same.

   The Complaint does not meet either of these requirements.  The alleged "purpose"

of the reduction in hours — to avoid anticipated future costs associated with providing

ACA-compliant insurance (¶ 24) — has nothing to do with any right that plaintiff can

claim under either ERISA or any employee benefit plan.  Nor does the Complaint allege

any facts suggesting that plaintiff or any other putative class member was targeted for

action as required for a claim under section 510.

## I.  THE COMPLAINT FAILS TO PLEAD FACTS SHOWING INTERFERENCE WITH ANY BENEFIT PROTECTED BY ERISA.

   "[T]o succeed on a Section 510 claim, a plaintiff must demonstrate the employer

specifically intended to interfere with benefits." *Berube*, 348 F. App'x at 687 (citing

*Ingersoll-Rand*, 498 U.S. at 140).  Thus, "[n]o ERISA cause of action lies where the loss

of . . . benefits was a mere consequence of, but not a motivating factor behind, a

---

[2]   Section 510 refers specifically to "any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140 (West 2015); *see also* 29 U.S.C. § 1140, *available at* uscode.house.gov.  The bill that became Section 510, Public Law 93-406, uses the word "title" instead of "subchapter," as does the version of the codified statute available on LEXIS. *See* 29 U.S.C. § 1140 (LEXIS 2015). The word "title" in Public Law 93-406, title I, § 510, clearly refers to title I of ERISA.  In the alternative version of the statute, "subchapter" refers to the same provisions, *i.e.*, Title 29, Chapter 18, Subchapter I of the United States Code, which is also called "Protection of Employee Benefit Rights."

[3]   The Welfare Plans Protection Disclosure Act ("WPPDA"), also referenced in section 510, is not relevant.  Upon passage of ERISA, Congress repealed WPPDA "except that such Act shall continue to apply to any conduct and events which occurred before the effective date of [ERISA]." 29 U.S.C. § 1031(a)(1).  None of the conduct alleged in the Complaint occurred before the effective date of ERISA in 1974.

termination of employment" or other adverse action sufficient to support a § 510 claim. *Dister* v. *Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (quoting *Titsch* v. *Reliance Grp.*, 548 F. Supp. 983, 985 (S.D.N.Y. 1982), *aff'd mem.*, 742 F.2d 1441 (2d Cir. 1983)); *see also Stewart* v. *NYNEX Corp.*, 78 F. Supp. 2d 172, 187 (S.D.N.Y. 1999) (Hellerstein, J.).

Here, the Complaint contains extensive allegations to the effect that the purpose of the reduction in plaintiff's hours was to avoid anticipated future costs associated with providing ACA-compliant insurance beginning in 2015 (¶ 24); no other motive is alleged. But an action undertaken for such a purpose cannot form the basis for a section 510 claim because: (1) neither ERISA nor the ACA creates any right to ACA-compliant health coverage, so no claim can lie for alleged "interference" with such a purported statutory right; (2) section 510 does not authorize a claim based on alleged "interference" with any "right" to *yet-to-be-created, future* benefits under an ACA-compliant plan that D&B might have adopted in 2015, well after the alleged "interference," because section 510 does not protect benefits that have not yet been created; and (3) the Complaint does not state a claim for interference with attainment of any rights that existed in 2013, because the Complaint unequivocally alleges that the purpose behind the reduction in hours was something different from interference with such rights — *i.e.,* to avoid anticipated future costs associated with providing benefits that did not yet exist.

## A. Neither ERISA nor the ACA Grants a Right to Employer-Provided Health Coverage

To the extent the Complaint purports to assert a claim for interference with a purported right to health coverage under the ACA itself, it fails to state a claim for the simple reason that ERISA provides no such right.

11

Before passage of the ACA, the Supreme Court recognized that "ERISA does not mandate that employers provide any particular benefits." *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983); *see also Owens* v. *Storehouse, Inc.*, 984 F.2d 394, 399 (11th Cir. 1993) ("The 'right' referred to [in section 510] is not any right in the abstract.  Rather, it is one specifically conferred by the plan or by ERISA . . . .  ERISA does not confer a right to particular health benefits.") (citing *Shaw*, 463 U.S. at 91).  The ACA did nothing to insert any right to coverage into ERISA.  To be sure, the ACA did add a section to ERISA—Section 715—which in turn incorporates "part A of title XXVII of the Public Health Service Act," 42 U.S.C. § 300gg *et seq.*, as enforceable provisions of the law.  29 U.S.C. § 1185d.  The incorporated sections, however, deal not with an employer's obligation to provide coverage itself, but rather with the terms of coverage that are now required for all health plans.  These requirements include coverage for preexisting conditions, 42 U.S.C. § 300gg-3, non-discrimination in health care, 42 U.S.C. § 300gg-5, and disclosure of information, 42 U.S.C. § 300gg-9.  The Complaint does not allege a failure of any D&B plan to comply with minimum requirements of the ACA; it asserts only a claim under § 510, which concerns only employment actions that interfere with an employee's exercise or attainment of benefits.

Nor is there any right to employer-provided health insurance under the ACA itself.  As the Complaint acknowledges, the ACA does not impose an affirmative obligation upon employers to provide health insurance to employees; the law merely imposes a tax if the employer fails to do so.  *See, e.g.*, *Ass'n of Am. Physicians & Surgeons, Inc.* v. *Sebelius*, 901 F. Supp. 2d 19, 37 (D.D.C. 2012) (holding the employer mandate to be essentially similar to the individual mandate examined by the Supreme

12

Court in *Nat'l Fed'n Indep. Bus.* v. *Sebelius*, 132 S. Ct. 2566 (2012), and held to be a

tax). (*See* ¶ 22.)  ACA Section 1513 imposes two different types of tax penalties, one for

failing to provide affordable coverage to employees, and another for failing to provide

any coverage at all.  *See* 26 IRC § 4980H.  Because employers are not required to provide

healthcare coverage to employees, employees have no right to employer-provided

coverage as a matter of law.

### B.  ERISA Section 510 Does Not Provide a Cause of Action for Interference with Benefits Yet to Be Created

To the extent the Complaint purports to assert a claim based on interference with

an ACA-compliant plan that D&B might have adopted in 2015, it cannot state a claim

under section 510 for actions taken in 2013, because, as courts have held, ERISA does

not provide a cause of action to employees for benefits yet to be created.

In *Kelly* v. *Chase Manhattan Bank*, 717 F. Supp. 227 (S.D.N.Y. 1989), the court

held that section 510 provides no claim to an employee who was terminated in order to

prevent him from obtaining additional benefits that the employer considered adding to an

existing plan — *but had not yet promised* — at the time of the termination.  *Id.* at 229,

232.  After a merger of the plaintiff's employer, the combined company began to

consider implementation of a supplemental voluntary retirement plan.  *Id.* at 232.  The

plaintiff, who was entitled to pension and severance benefits under an existing benefits

plan, was terminated, despite assurances that he would have a position after the

integration of the merged companies.  *Id.* at 229, 232.  The defendant employer thereafter

instituted a supplemental voluntary retirement plan, and the plaintiff sued, alleging that

his termination six months prior to adoption of this plan — which would have granted

13

plaintiff significant additional benefits — gave rise to a section 510 violation. *Id.* at 229.

The court granted summary judgment for the defendant, reasoning that:

> This is not a case where the plaintiff was prevented from vesting in a pre-existing benefit plan. Rather, plaintiff complains that he was prevented from enjoying a benefit yet to be created. This alone cannot raise an inference of discrimination. To hold otherwise would subject every large corporation to charges of discrimination by recently-terminated employees whenever a benefit plan was subsequently implemented. Not only would this wreak havoc in the administration of ERISA plans but it would also operate as a disincentive to the expansion of employee benefits.

*Id.* at 232.

Other decisions in this Circuit provide further support for the black-letter principle that an action to deny an employee benefits not yet created — even if under consideration — cannot support a claim under section 510. *See Weinberg* v. *Mizuho Capital Mkts. Corp.*, No. 03 Civ. 2612, 2003 WL 22462022, at *6 (S.D.N.Y. Oct. 30, 2003) (granting motion to dismiss section 510 claim under Rule 12(b)(6), where plaintiff alleged that defendant terminated him to avoid providing severance benefits under severance plan that was not adopted until after his termination); *Yoran* v. *Bronx-Lebanon Hosp. Center*, No. 96 Civ. 2179, 1999 WL 378350, at *12 (S.D.N.Y. June 10, 1999) (holding that an employee's termination shortly before the organization implemented a voluntary retirement plan did not give rise to a section 510 violation as a matter of law); *Niblo* v. *UBS Global Asset Mgmt. (Americas) Inc.*, No. 11 Civ. 4447, 2012 WL 995276, at *5 (S.D.N.Y. Mar. 21, 2012) (dismissing section 510 claim under Rule 12(b)(6), where employee alleged that employer pressured him to misprice securities, and then denied him performance-based severance benefits that had not been created at the time of the alleged adverse action). And, according to the Third Circuit, it is "doubtful that § 510 was intended to apply in any situation in which the right interfered with has not yet been

14

created, *i.e.*, where there is no plan in existence." *Young* v. *Pa. Rural Elec. Ass'n*, 80 F.

App'x 785, 790 (3d Cir. Nov. 17, 2003).  As the court explained:

> The consequences of a contrary conclusion would be startling.  Any decision made by an executive in the course of formulating a plan would violate § 510 if it narrowed the class of participants who could qualify for a benefit.  Any such decision would interfere with a right to which those excluded by the decision might "become entitled."

*Id.* at 790 n.2.

Here, to the extent the Complaint may be read as asserting a claim based on

alleged intentional interference, *in 2013*, with benefits under an ACA-compliant plan that

D&B *might* later adopt, *Kelly*, *Weinberg*, *Yoran*, *Niblo*, and *Young* dispose of any such

claim as a matter of law.  As in *Kelly*, such a claim would be improperly based on alleged

deprivation of benefits "yet to be created" at the time of the adverse employment action.

The ACA provides no guarantee to employees that these not-yet-created benefits would

*ever* exist.  Thus, even if D&B were considering an expansion of benefits at the time it

reduced plaintiff's hours, that is exactly the claim that the *Kelly* court rejected, in part due

to its far-reaching implications that would act as a "disincentive to the expansion of

employee benefits."  *Kelly*, 717 F. Supp. at 232.

The purpose of section 510 compels the conclusion that no claim will lie based on

interference with rights that do not yet exist.  The purpose of section 510 is to "help[]

make *promises* credible," and to ensure "that employers do not 'circumvent the provision

of *promised* benefits.'"  *Inter-Modal Rail Emps. Ass'n* v. *Atchison, Topeka, and Santa Fe*

*Ry. Co.*, 520 U.S. 510, 515 (1997) (quoting *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S.

133, 143 (1990)) (emphasis added).  But the Complaint does not and cannot allege that

plaintiff or any putative class member was ever promised ACA-compliant benefits.

Moreover, section 510 is not to serve as a basis to "second-guess business decisions or to

15

question a corporation's means to achieve a significant goal." *Dister*, 859 F.2d at 1116; *see also Inter-Modal Rail Emps.*, 520 U.S. at 516 (stating that § 510 is not to be used to deny employers the ability to make "fundamental business decisions"). Here, D&B is alleged to have responded to an impending change in the law by adjusting its work force to manage the costs associated with that change. Section 510 provides no claim for such actions.

## C.  The Complaint Fails to State a Claim that D&B Intended to Interfere with Employees' Then-Existing Plan Benefits

The Complaint asserts, in the Claim for Relief, that D&B reduced plaintiff's hours and those of putative class members to interfere with their attainment of their rights under "the Dave & Buster's Plan" (¶ 47), a term the Complaint uses to refer to *both* a putative ACA-compliant plan to which plaintiff seeks to be "restored" (Cplt. at 11) *and* a plan in which plaintiff and putative class members "were participants" in 2013 (¶ 7). To the extent this allegation is meant to refer to purported "rights" under an ACA-compliant plan as of 2015, it does not state a claim for reasons already discussed. (*See supra* pp. 13-16.)  Alternatively, if the allegation refers to "the intent and the purpose . . . of interfering with . . . attainment of rights" in existence at the time of the reduction in hours, it is insufficient to state a claim as a matter of law, because the Complaint provides no factual support at all for a claim that D&B intended to deprive plaintiff of any rights under D&B's then-existing plan in 2013. To the contrary, the remainder of the Complaint specifically and repeatedly alleges an intent to interfere with speculative benefits that had not yet been created and which, as discussed above, cannot form the basis of a section 510 claim.

16

Courts have required that a section 510 "pleading . . . be supported by more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Haight* v. *NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 4993, 2014 WL 2933190, at *7 (S.D.N.Y. June 27, 2014) (slip copy) (quoting *Iqbal*, 556 U.S. at 678). Thus, courts in this Circuit have dismissed complaints that provide no factual support for a bare allegation of intent to deny benefits. In *Haight*, for example, the court dismissed a claim under section 510, ruling that the complaint did "not allege sufficient facts to state a plausible claim that [the defendant's] motive in terminating Plaintiff was to keep her from receiving her pension benefits," and rejecting as insufficient allegations that the employer "intended to deprive Plaintiff of ERISA protected benefits" and that "she was fired shortly before the vesting of her pension." *Id.* at *6, 16. Similarly, in *Clapp* v. *Greene*, 743 F. Supp. 273 (S.D.N.Y. 1990), the court dismissed a claim under section 510 by a partner in a law firm who was terminated and therefore prevented "from continuing to be enrolled in [the law firm's] pension benefit and health and medical plans." *Id.* at 276. Although the complaint alleged that her "expulsion" was "for the purpose of interfering with the attainment of rights to which Plaintiff may become entitled under [the law firm's benefit plans] and under ERISA," *id.* at 276. n.2, the court ruled that it did not state a claim, citing cases holding that "[n]o ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Id.* at 276.

The Complaint contains no factual allegations giving rise to a plausible inference that D&B reduced any employee's hours to interfere with any rights under the then-

existing D&B plan.  The allegation in paragraph 47 of the Complaint — if construed to refer to alleged rights in existence at the time of the reduction in hours — parallels those held insufficient in *Haight* and *Clapp*.  Indeed, the case for dismissal is far stronger here than in *Haight*, where at least the plaintiff alleged that she was fired shortly before her pension vested.  Here, the plaintiff does not allege even circumstantial facts suggesting any connection between the change in her hours and her receipt of benefits under the existing plan.  The Complaint thus falls well short of *Iqbal*'s plausibility threshold, and fails to state a claim for intentional interference with any rights that plaintiff or putative class members had as of the time their hours were reduced.

## II.  THE COMPLAINT FAILS TO ALLEGE THAT PLAINTIFF WAS TARGETED FOR THE ALLEGED DISCRIMINATION.

The Complaint fails for yet another reason: it does not plead facts, as it must, showing that plaintiff or putative class members were targeted for adverse employment action based on any ERISA-related characteristic special to them.   The statutory language and legislative history, as well as the case law, establish that section 510 was intended to apply to actions targeted to particular individuals, on account of ERISA-related characteristics specific to them, and not shared by others who were not subject to the challenged action — such as discharge of an employee with pension rights that are about to vest.  The Complaint's allegations fall far short of meeting this standard and should be dismissed for this reason alone.

In *Andes* v. *Ford Motor Co.*, 70 F.3d 1332 (D.C. Cir. 1995), the D.C. Circuit held that section 510 applies only to "discriminatory, viz targeted, actions," and affirmed a grant of summary judgment for the defendant on a section 510 claim arising from the sale of a subsidiary, which resulted in the discharge of numerous employees and a resulting

loss of ERISA benefits. *Id.* at 1338-39.[4]  The court recognized it is "highly unlikely that an organizational decision would not be motivated, at least in part, by benefit considerations," and that "typically plaintiffs produce evidence that potential benefit costs contributed in some manner to an organizational decision," but nevertheless "five of the six circuit courts to have addressed the question whether a corporate organizational change . . . violated § 510 have easily rejected such claims." *Id.* at 1336-37 (citing cases).

The D.C Circuit explained that the actions proscribed by section 510 — "discharge, fine, suspend, expel, discipline or discriminate" — typically refer to actions that target particular individuals. *Id.* at 1337.  The same words, the court noted, "are used first in the section to ban a company from retaliating against an employee for exercising 'any right' under the statute," which by definition is targeted at individuals who engage in protected activity. *See id.* at 1337-38.

Of equal importance to the *Andes* court was the legislative history of section 510. That legislative history "reveals that [section 510 was] aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Id.* at 1338 (quoting *West* v. *Butler,* 621 F.2d 240, 245 (6th Cir. 1980)).  Similarly, the Senate Report on the provision that eventually became section  510 stated that "[t]hese provisions were added by the Committee in the face of evidence that in some plans a worker's pension rights or the expectations of those rights were interfered with by the use of *economic sanctions or*

---

[4]    Although *Andes* and cases cited therein involved the appeal of a summary judgment order, the rule of law articulated by the D.C. Circuit and other courts is equally applicable on a motion to dismiss.  It is well settled that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 570 (2007).  Thus, if a complaint alleges facts that, even if true, cannot plausibly withstand summary judgment as a matter of law, it should be dismissed.

*violent reprisals.*" *Id.* (quoting S. Rep. No. 93-127, 93d Cong., 2d Sess., *reprinted in*

1974 U.S. Code Cong. & Admin. News 4838, 4872 (1974) (emphasis court's)).

"[S]elling a subsidiary," said the court, is not an 'economic sanction' or a 'violent

reprisal.'" *Id.*

   Adding further support to the requirement of "targeting," one of "the leading

supporters of the ERISA bill, Senator Williams, when introducing the Conference Report

to the Senate, explained that '[a] further protection for employees is the prohibition

against discharge, or *other discriminatory conduct* toward participants and beneficiaries

which is designed to interfere with attainment of vested benefits or other rights under the

bill.'" *Id.* (quoting 120 Cong. Rec. 29933 (1974) (emphasis court's)). To similar effect

was the discussion between Senators Hartke and Javits, also noted by the *Andes* court:

> Senator Hartke asked whether there was not a "direct, positive incentive
> for every employer to fire a person [assuming that some of that person's
> benefits will vest when he turns 30,] when he reaches 29 years and 364
> days of age?" Senator Javits responded by noting that he had "included an
> express amendment on that score which would provide a remedy" in such
> a situation, and that § 510 addressed "precisely the areas to which the
> Senator refers."

*Id.* (quoting 119 Cong. Rec. 30044 (1973)).  And, as the *Andes* court also pointed out,

"[t]he Supreme Court has implicitly adopted this view of congressional intent," noting

that *Ingersoll-Rand* "described a claim that an employer fired an employee who had

worked for the company for over nine years, four months before his pension would have

vested, allegedly in order to avoid making contributions to his pension fund as

'prototypical of the kind [of claim that] Congress intended to cover under § 510.'" *Id.*

(quoting *Ingersoll-Rand*, 498 U.S. at 143).

   Accordingly, the *Andes* court concluded that, "as applied to sale or closure of an

entire unit, the plaintiffs can satisfy § 510 only by showing that some ERISA-related

characteristic special to the unit (such as its having a clearly above-average proportion of employees with pension rights about to vest) was essential to the firm's selecting the unit for closure or sale." *Id.* at 1338. This reasoning and the cited legislative history of section 510 compel the conclusion that the express requirement of "discriminat[ion]" in that provision limits its remedies to cases in which one or more employees are targeted for adverse action based on "some ERISA-related characteristic special to" them, as distinct from employees who are not targeted — such as pensions about to vest, *e.g.*, *Bang* v. *IBM Corp.*, 600 F. Supp. 2d 430 (E.D.N.Y. 2009) (denying motion to dismiss section 510 claim by employee who was terminated after 30 years of employment, seven months before his pension vested), or higher healthcare costs than other employees, *e.g.*, *Trujillo* v. *PacifiCorp*, 524 F.3d 1149, 1151-52, 1156-57, 1160-61 (10th Cir. 2008) (finding that evidence that defendant classified plaintiffs' son's brain cancer as a "high-dollar" health expense was sufficient to raise triable issue of fact that plaintiffs were terminated to interfere with their health benefits).

Here, as in *Andes*, there is no allegation whatsoever that this particular plaintiff or any putative class member was selected for reduction in hours based on anything in her or their benefit situations at the time of the challenged action that differed from the situations of employees whose hours were not reduced. Indeed, the Complaint alleges nothing as to the reasons particular employees were selected for reduced hours while others were not. Rather, it alleges only an intent on the part of D&B to manage future healthcare costs overall. As a result, even if the Complaint adequately pled that D&B reduced the hours of plaintiff and putative class members "for the purpose of interfering with the attainment" of benefits protected under ERISA — and it does not — it still fails

to state a claim, because it does not allege any facts suggesting that they were "targeted" for adverse employment action.

To be sure, *Andes* cautioned that it did not hold that section 510 "could never be implicated in a company's basic organizational decision." *Andes*, 70 F.3d at 1338. However, the exceptions to the basic rule that organizational change cannot support a section 510 claim are not present here. The court noted the Third Circuit's decision in *Gavalik* v. *Continental Can Co.*, 812 F.2d 834 (3d Cir. 1987), which "concluded that a decision to close down a production line causing a 'loss of employment,' also described as 'loss of work,' and 'layoffs,' constituted a § 510 violation." *Andes*, 70 F.3d at 1338. In *Gavalik*, however, "[t]he company had developed a 'liability avoidance' program which authorized plant managers to shift business to plants that either had low unfunded pension liabilities or plants that needed work in order to retain workers with vested benefits." *Id.* at 1338-39. Thus, *Gavalik* involved adverse employment action against a group of employees, who were selected based on a combination of the overall amount of their unfunded pensions and their unvested status, as compared with employees who were not adversely affected.

No possible reading of the Complaint supports an inference that D&B's workforce restructuring was a pretext for targeting employees with a particular, ERISA-protected characteristic. Indeed, such a characteristic is never identified, let alone connected — directly or circumstantially — to D&B's business decision to employ a greater percentage of part-time employees. Accordingly, the Complaint should be dismissed.

22

## CONCLUSION

For the foregoing reasons, we respectfully submit that the Complaint should be dismissed with prejudice.

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP

By:
    Daniel J. Beller
    Daniel J. Leffell
    Maria H. Keane

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
dbeller@paulweiss.com
dleffell@paulweiss.com
mkeane@paulweiss.com

*Attorneys for Defendants*
*Dave & Buster's Inc. and Dave & Buster's*
*Entertainment, Inc.*

23