UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MARIA DE LOURDES PARRA MARIN on behalf
of herself and all other persons similarly situated,

                                  Plaintiffs,

                 - against -

DAVE & BUSTERS, INC. and
DAVE & BUSTER'S ENTERTAINMENT, INC.,

                                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Civil Action No.15-CV-03608-AKH

ECF Case

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**FRUMKIN & HUNTER LLP**
William D. Frumkin, Esq.
Elizabeth E. Hunter, Esq.
1025 Westchester Avenue, Suite 309
White Plains, New York 10604
(914)468-6096

**ABBEY SPANIER, LLP**
Judith L. Spanier, Esq.
Nancy Kaboolian, Esq.
212 East 39th Street
New York, New York, 10016
(212) 889-3700

**CONOVER LAW OFFICES**
Bradford D. Conover, Esq.
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212- 588-9080

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii, iv, v

PRELIMINARY STATEMENT ..................................................................1

RELEVANT FACTS ...................................................................................3

LEGAL ARGUMENT .................................................................................5

POINT I.    DEFENDANTS' REDUCTION OF PLAINTIFF'S HOURS WAS
            INTENDED TO AND CAUSED A LOSS OF HER EXISTING
            BENEFITS ........................................................................5

      A.    Legal Standard for Motion to Dismiss ...............................5

      B.    Legal Standard For ERISA § 510.......................................6

      C.    Defendants Interfered With Employees'
            Current Benefits Under An Existing Plan .........................8

POINT II.   THE COMPLAINT ADEQUATELY PLEADS DEFENDANTS'
            INTENT TO INTERFERE WITH BENEFITS PROTECTED BY
            ERISA, NOT MERELY THE CONSEQUENTIAL LOSS OF
            BENEFITS FROM AN UNRELATED ADVERSE
            EMPLOYMENT ACTION ..................................................11

      A.    The Complaint Alleges A Prima Facie Claim Under
            ERISA § 510 ...................................................................11

      B.    Plaintiff Adequately Alleges That Defendants Reduced Her
            Hours With The Specific Intent To Interfere With
            Her Existing Benefits .....................................................13

POINT III.  THE ACA IS ONLY A BACKGROUND MOTIVATION
            THAT PROVIDES EVIDENCE OF DEFENDANTS' SPECIFIC
            INTENT TO CUT PLAINTIFF'S HOURS TO RENDER HER
            INELIGIBLE FOR CURRENT BENEFITS .........................17

      A.    Plaintiff Does Not, And Need Not, Allege A Right To
            ACA-Compliant Benefits.................................................17

*i*

**B.    The ACA Is Only Defendants' Background
Motivation For Its Intent To Interfere With
Plaintiff's Benefits And Is Not Determinative**.........................................20

**POINT IV.    "TARGETING" IS NOT AN ELEMENT OF AN
ERISA § 510 CLAIM**..................................................................................22

**POINT V.    ERISA § 510 CLAIMS SHOULD NOT BE DECIDED
ON A MOTION TO DISMISS** ...............................................................26

**CONCLUSION** ...................................................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Andes v. Ford Motor Co.*, 70 F.3d 1332 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . .  23, 24, 25

*Aronson v. Servus Rubber, Div. of Chromalloy*, 730 F.2d 12 (1st Cir.) . . . . . . . . . . . . . . . . .  24

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Cioinigel v. Deutsche Bank Ams. Holding Corp.*, 2013 U.S. Dist.
LEXIS 4689 (S.D.N.Y. Jan. 10, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 22

*Clapp v. Greene*, 743 F. Supp. 273 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

*Crawford v. TRW Auto. U.S. LLC*, 2007 U.S. Dist. LEXIS 78755
( E.D. Mich. Oct. 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21, 24

*Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . .  24

*Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1110 (2d Cir. 1988) . . . . . . . . . . . . . .  7, 8, 11

*Duffy v. Drake Beam Morin*, 1998 U.S. Dist. LEXIS 7215
(S.D.N.Y. May 15, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Ehrlich v. Howe*, 1992 U.S. Dist. LEXIS 18269, 1992 WL 373266 (S.D.N.Y.) . . . . . . .  8, 16, 27

*Eichorn v. AT & T Corp.*, 248 F. 3d 131 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Erie City Iron Works v. Thomas*, 139 F. 995 (C.C.S.D.N.Y. 1905) . . . . . . . . . . . . . . . . . . .  19

*Fraser v. Fiduciary Trust Co. Int'l*, 2005 U.S. Dist. LEXIS 48059
(S.D.N.Y. June 23, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Gandelman v. Aetna Ambulance Serv., Inc.*, 48 F. Supp. 2d 169 (D. Conn. 1999) . . . . . .  7, 8, 11

*Gioia v. Forbes Media LLC*, 501 F. App'x. 52, 54 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . .  6

*Haight v. NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 4993, 2014 WL 2933190,
2014 U.S. Dist. LEXIS 88117 (S.D.N.Y. June 27, 2014) . . . . . . . . . . . . . . . . . . . . .  15, 16

*Hartline v. Sheet Metal Worker's Nat'l Pension Fund*, 134 F.
Supp. 2d 1 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Inter-Modal Rail Emples. Ass'n v. Atchison, Topeka & Santa Fe Ry.*,
    520 U.S. 510 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

*Kelly v. v. Chase Manhattan Bank*, 717 F. Supp. 227 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . 9, 10

*Kross v. Western Elec. Co.*, 701 F.2d 1238 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lechleiter v. P&G Distrib. Co.*, 2002 U.S. Dist. LEXIS 8054 (D. Conn. Mar. 27, 2002) . . . . 24

*Local 812 GIPA v. Canada Dry Bottling Co., 1999 U.S. Dist.*
    *LEXIS 7174* (S.D.N.Y. May 10, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 26

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Niblo v. UBS Global Asset Mgmt. (Americas) Inc.*, No. 11 CIV. 4447 DAB, 2012
    WL 995276 (S.D.N.Y. Mar. 21, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Quinby v. WestLB AG*, 2007 U.S. Dist. LEXIS 28657 (S.D.N.Y. Apr. 19, 2007) . . . . . . . . . . 21

*Reichelt v. Emhart Corp.*, 921 F.2d 425 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143 (E.D.N.Y. 1996) . . . . . . . 14, 16, 27, 28

*Seaman v. Arvida Realty Sales*, 985 F.2d 543 (11th Cir 1993) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 n. 1 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tavoloni v. Mount Sinai Med. Ctr.*, 984 F. Supp. 196 (S.D.N.Y. 1997) . . . . . . . . . . . . . . 25, 27

*Unida v. Levi Strauss & Co.*, 986 F.2d 970 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Vallone v. Banca Nazionale del Lavoro*, Nos. 02 Civ. 6064, 02 Civ. 7102,
    2004 U.S. Dist. LEXIS 25252 (S.D.N.Y. Dec. 7, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

*Varhola v. Doe*, 820 F.2d 809 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Weinberg v. Mizuho Capital Markets Corp.*, No. 03 CIV. 2612
    (SAS, 2003 WL 22462022 (S.D.N.Y. Oct. 30, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*West v. Greyhound Corp.*, 813 F.2d 951 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Yoran v. Bronx-Lebanon Hosp. Ctr.*, No. 96 CIV. 2179 (PKL), 1999
    WL 378350 (S.D.N.Y. June 10, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122 (2d Cir. 2002) . . . . . . . . . . . . . . . . 6

*Zahler v. Empire Merchs., LLC*, 2012 U.S. Dist. LEXIS 11367
   (E.D.N.Y. Jan. 31, 2012) ................................................ 14, 27

**Statutes**

29 U.S.C. § 1140 ....................................... 6, 7, 12, 18

ERISA § 510 ........................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................... 6

## PRELIMINARY STATEMENT

Plaintiff, Maria De Lourdes Parra Marin, hereby submits this Memorandum of Law in opposition to Defendants' motion to dismiss the complaint.  Plaintiff has been an employee of Dave & Busters, Inc., ("Dave & Busters" or the "Company") since 2006.  For seven years from 2006 to 2013, Plaintiff worked as a full-time employee, eligible to, and did, participate, in Dave & Buster's ERISA health insurance plan ("Dave & Buster's Plan").   However, starting in 2013, the Company reduced Plaintiff's and other full time employees' hours to under 30 hours per week with the intent and the purpose, in whole or part, of interfering with their current health insurance benefits as participants under the Dave & Buster's Plan. Complt at ¶¶ 24, 29, 30, 31, 37, 39, 47.  In fact, by letter dated March 10, 2014, Dave & Buster's officially notified Plaintiff that she no longer qualified for coverage under Dave & Buster's Plan because she had "to average at least 28 hours per week to be classified as a full-time employee and to be eligible for full-time medical and vision benefit plans.  Complaint ("Complt") at ¶ 34.  As a result, plaintiff was advised that her status would be changed to part-time, and that her current coverage in the Dave & Buster's Plan for full-time employees would terminate on March 31, 2014. Complt ¶35.

Defendants ignore these facts and try to shift the focus of this action to issues regarding the providing health care pursuant to the ACA.  Defendants' motion should be denied for four essential reasons.  First, Defendant's motion ignores key factual allegations asserted by Plaintiff to support her contention that Defendants admittedly reduced her hours with the intent and effect of making her ineligible to continue to receive the health insurance benefits that she had at the time.

Second, Defendant's motion misconstrues the legal basis for Plaintiff's Employee Retirement Income Security Act of 1974 ("ERISA") § 510 claim by improperly equating the

<u>consequential</u> loss of benefits that results from an adverse employment action, such as termination due to job elimination or for performance, with cutting an employee's hours for the <u>specific purpose of causing them to lose benefits</u>.

Third, Defendants' contention that the Complaint does not state an ERISA § 510 claim because the Patient Protection and Affordable Care Act ("ACA") does not entitle Plaintiff to a right to ACA-complaint insurance is a red herring. The ACA is <u>essentially a back story</u>, or merely an underlying reason why Defendants wanted to render Plaintiff ineligible for health insurance benefits (which is the immediate reason why Defendants chose to interfere with Plaintiff's hours). The relevant analysis is <u>whether Dave & Buster's was motivated, in whole or in part, to intentionally cut employee hours to cause current benefit ineligibility</u>, the very circumstance that ERISA § 510 was enacted to prohibit when it became law in 1974, 41 years ago.

Fourth, if Defendants' targeting argument were to be accepted by this Court, it would render meaningless the purpose, intent, application, and enforcement of ERISA § 510. Plaintiff states a claim under ERISA § 510 because she alleges that Defendants reduced her hours to interfere with her benefits; she is not required to show that she and the other employees whose hours were cut have some benefits-related characteristic that differs from those employees whose hours were not cut. If Defendants were correct, any employer could interfere with the current benefits of a significant number of employees by reducing their work hours, as long as at least some other similarly situated employees were not subject to the same action. This is not, and has never been, the law under ERISA § 510.

For all of the reasons set forth below, Defendants' motion to dismiss should be denied in its entirety.

## RELEVANT FACTS

*Plaintiff Had Existing Health Insurance As A Full-Time Employee*

In or about August, 2006, Plaintiff Maria de Lourdes Parra Marin was hired by Dave & Buster's as a full-time employee in its kitchen staff at Dave & Buster's Times Square Store. Complt ¶¶ 18.   For seven years, from in or about 2006 through May 2013, Plaintiff worked approximately 30-45 hours a week at the Dave & Buster's Times Square Store at $15 per hour for a weekly pay in the range of $450-$600.  Complt ¶ 19.  As a full-time employee, Ms. Marin, like approximately 100 other full-time employees at the Times Square Store, was a participant in, and received health insurance coverage under, the Dave & Buster's Plan.  Complt ¶ 7, 20, 21.

*Defendants Cut Employees' Hours to Cause Them to be Ineligible for Health Insurance*

On or about March 23, 2010, the ACA became law and required that insurance coverage provided by covered employers must be affordable and provide a minimum value, within the meaning of the law, or the employers may liable for a penalty. These requirements became effective for employers with over 100 full-time employees on January 1, 2015.  Complt ¶ 22.

In response, Dave & Buster's designed and implemented a nationwide "effort in 2013 intended to 'right-size' the number of full-time and part-time employees," so as to avoid the costs associated with providing insurance that complied with the requirements of the ACA.  Complt ¶ 24. In or about June 2013, Dave & Buster's held meetings for all employees at the Time Square Store, at which General Manager, Chris Waugaman, accompanied by the Assistant General Manager, JD Roewer, announced that compliance with the ACA would cost Dave & Buster's as much as "two million dollars," and that, to avoid that cost, Dave & Buster's planned to reduce the number of the full-time employees at the Times Square Store to approximately 40.  Complt ¶ 25, 26.  Upon information and belief, similar meetings were held at many other Dave & Buster's

3

locations around the country. Complt ¶ 27. On or about June 9, 2013, a former employee at another Dave & Buster's location, posted to Dave & Buster's' Facebook page that "in a preemptive strike against Obamacare, Dave and Buster's cut the vast majority of their employees down to part-time last week. . . . . They called store meetings and told everyone they were losing hours (pay) and health insurance due to Obamacare . . ." Complt ¶ 28.

*Plaintiff's Hours Were Reduced With the Intent of Cutting Her Existing Health Insurance*

Beginning in or about June 2013, Dave & Buster's, in accordance with its attempt to "right-size" the number of full-time employees, reduced Ms. Marin's hours to under 30 hours per week. Complt ¶ 29. In August 2013, in accordance with Dave & Buster's effort to "right size" the number of full-time employees who participated in the Dave & Buster's Plan, Ms. Marin's supervisors further reduced her hours to less than 20 hours each week. Complt ¶ 31. During the period November 2013 through February 2014, with the exception of two weeks, Ms. Marin's hours never equaled or exceeded 30 hours per week. Complt ¶ 32. Given the reduction in Ms. Marin's average hours from approximately 30-40 hours to approximately 10-25 hours per week, Ms. Marin's weekly pay, from August 2013 through February 2014, dropped from a range of approximately $450-600 to a range of approximately $150-375a week. Complt ¶ 33.

*Plaintiff Lost Her Existing Health Insurance*

By letter dated March 10, 2014, Dave & Buster's officially notified Ms. Marin that she no longer qualified for coverage under Dave & Buster's Plan because Dave & Buster's required its workers "to average at least 28 hours per week to be classified as a full-time employee and to be eligible for full-time medical and vision benefit plans," and Ms. Marin's average hours worked from September 1, 2013 through February 28, 2014, were "17.43 hours per week." Complt ¶ 34. Dave& Buster's March 10, 2014 letter further advised Ms. Marin that her status would be

changed to part-time, and that her current coverage in the Dave & Buster's Plan for full-time employees would terminate on March 31, 2014, which was nine months before the ACA employer mandate became effective. Complt ¶ 35. On or before March 31, 2014, Dave & Buster's terminated Ms. Marin's current health insurance coverage under the Dave & Buster's Plan. Complt ¶ 36. Defendants reduced work hours for Plaintiff and the class to under 30 hours per week with the intent and the purpose, in whole or part, of interfering with their attainment of their rights as participants under the Dave & Buster's Plan. Complt ¶ 47.

*Defendants Admit They Cut Hours to Reduce Health Insurance Costs*

Dave & Buster's admitted that it reduced Plaintiff's hours as part of a nation-wide "program in 2013 intended to right-size the number of full-time and part-time employees. Complt ¶ 37. Dave & Buster's also admitted that it was reducing employees' hours to address the number of employees eligible for health insurance and manage its health insurance costs. See Complt ¶ 30, 39.

## LEGAL ARGUMENT

**POINT I.** **DEFENDANTS' REDUCTION OF PLAINTIFF'S HOURS WAS INTENDED TO AND CAUSED A LOSS OF HER EXISTING BENEFITS.**

### A.   Legal Standard for Motion to Dismiss

A complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if a Plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss, a court must view all allegations raised in the complaint in the

light most favorable to the non-moving party, accept as true all factual allegations in the complaint, and draw all reasonable inferences from well-pleaded factual allegations. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1 (2002); *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002). Because the complaint must allege facts which confer a cognizable right of action, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York,* 286 F.3d at 125 (citations and internal quotation marks omitted). Here, as discussed below, Defendants are improperly seeking to have inferences drawn in their favor, which is contrary to the standard that the Court must apply when considering Defendants' motion to dismiss.

**B.      Legal Standard for ERISA § 510**

ERISA § 510 provides, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. §1140.

With respect to welfare plans, which include health insurance plans, a plaintiff need not have a vested right to benefits in order to assert her rights under ERISA § 510. *See Inter-Modal Rail Emples. Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 514-515 (1997); *see also Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir. 1990). Therefore, under ERISA § 510, it is unlawful to take action against "an employee either in retaliation for using a qualified employee health plan or in order to interfere with the employee's use of that plan." *Gioia v. Forbes Media*

6

*LLC*, 501 F. App'x. 52, 54 (2d Cir. 2012) (summarizing 29 U.S.C. § 1140).   "Discharging an employee for the purpose of depriving him of continued participation in a company-provided group health plan is a violation of section 510." *Gandelman v. Aetna Ambulance Serv., Inc.*, 48 F. Supp. 2d 169, 172-174 (D. Conn. 1999)(citing *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1243 (7th Cir. 1983)).

ERISA § 510 cases are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) that is applied to other employment discrimination cases.  *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1110 (2d Cir. 1988) ("Because the existence of a specific intent to interfere with an employee's benefit rights is critical in § 510 cases--yet is seldom the subject of direct proof--the district court allocated the burdens of production and order of proof in a manner similar to the approach used in Title VII and ADEA cases, where direct evidence of discriminatory intent is also scarce or nonexistent. ... The task confronting an ERISA plaintiff--such as *Dister*, who must show that Continental acted with the specific intent to deprive him of his 75/80 Plan benefits--remains as difficult as that posed to Title VII and ADEA plaintiffs.").

To establish a prima facie case under ERISA § 510, a plaintiff must show 1) that she is in a protected group, i.e., that she is an employee who has "an opportunity to attain rights in a covered benefit plan"; 2) that she was qualified for her position; and 3) that she was discharged or denied work "under circumstances that give rise to an inference of discrimination." *Dister*, 859 F.2d at 1114-15.  "An essential element of plaintiff's proof under the statute is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Id.* at 1111.  *See also Vallone v. Banca Nazionale Del Lavoro, N.Y. Branch*, No. 02 Civ. 6064, 02 Civ. 7102, 2004 U.S. Dist. LEXIS 25252, 2004 WL 2912887, at *2 (S.D.N.Y.

Dec. 14, 2004)("The fundamental question under § 510 . . . is whether the employer acted with the specific intent forbidden by the statute . . . ."). "This standard does not require the plaintiff to show that interference with ERISA rights was the sole reason for his discharge, but it does require him to show more than the incidental loss of benefits as a result of a discharge." *Gandelman v. Aetna Ambulance Serv., Inc.*, 48 F. Supp. 2d 169, 172-174 (D. Conn. 1999). A plaintiff "states a claim under section 510 if he alleges that defendant interfered with his employment relationship with the intent of preventing him from obtaining his ... benefits (or otherwise interfering with his rights under ERISA)." *Cioinigel v. Deutsche Bank Ams. Holding Corp.*, No. 12 Civ. 434, 2013 U.S. Dist. LEXIS 4689 (S.D.N.Y. Jan. 10, 2013). The timing of the adverse employment action and cost savings by the employer which resulted "are circumstances sufficient to give rise to an inference of discrimination." *Ehrlich v. Howe*, No. 92 Civ. 1079, 1992 U.S. Dist. LEXIS 18269, *12, 1992 WL 373266, *4 (S.D.N.Y.) (quoting *Dister*, 859 F.2d at 1115); *see also Duffy v. Drake Beam Morin*, No. 96 Civ. 5606, 1998 U.S. Dist. LEXIS 7215 (S.D.N.Y. May 15, 1998)("the timing of his discharge and the resulting cost saving to the employer raises an inference of discrimination."). The nature of a plaintiff's burden of proof at the prima facie stage is de minimus. *Dister*, 859 F.3d at 1114.

## C.    Defendants Interfered with Employees' Current Benefits Under an Existing Plan

Defendants' motion is premised on the mistaken factual contention that Plaintiff alleges only an intent to interfere with future benefits, not existing benefits.   Defendants argue that "section 510 does not authorize a claim based on alleged 'interference' with any 'right' to *yet-to-be-created, future* benefits under an ACA-compliant plan that D&B might have adopted in 2015...." Defs' MOL at 11.  However, Plaintiff does not assert her ERISA § 510 claim based upon interference with rights under an ACA-compliant plan that D&B might have been adopted

in 2015. By so arguing, defendants selectively ignore the clear factual allegation that defendants intentionally interfered with plaintiff's existing benefits. Rather, Plaintiff has expressly alleged that Defendants interfered with her current, then-existing benefits to which she was already entitled and already receiving. Specifically, Plaintiff alleges that she was a participant in the Dave & Buster's Plan, which is an ERISA health insurance plan sponsored by Dave & Buster's. Complt ¶ 7, 20, 45. (Defendants do not contest that Plaintiff was eligible and participated in Dave & Buster's Plan.) Plaintiff also alleges that Defendants "reduced work hours for Plaintiff and the class to under 30 hours per week with the intent and the purpose, in whole or part, of interfering with their attainment of their rights as participants under the Dave & Buster's Plan." Complt ¶ 47 (emphasis added). Plaintiff also alleges that "[a]s a result of the reduction of employee hours in accordance with the nationwide effort to 'right size' the number of full-time employees who participated in the Dave & Buster's Plan, Plaintiff and the class lost the health insurance benefits they had under the Dave & Buster's Plan." Complt ¶ 48 (emphasis added). Contrary to Defendants' argument, this is not a case about "benefits yet to be created" but is about Defendants' intentional interference with Plaintiff's currently existing rights and benefits to which she was already entitled as a participant in the Dave & Buster's Plan.

Defendants mistakenly rely upon *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227 (S.D.N.Y. 1989) and a few similar cases for the proposition that "section 510 provides no claim to an employee who was terminated in order to prevent him from obtaining additional benefits that the employer considered adding to an existing plan – *but had not yet promised* – at the time of the termination." Defs' MOL at 13. First, the decision in *Kelly* was based on the more stringent standard of proof applicable to summary judgment motions, not the burden of stating a claim to relief that is plausible on its face.

More importantly, *Kelly* is distinguishable because the plaintiff's ERISA § 510 claim was based upon an argument that he was terminated to prevent him from receiving a supplemental retirement benefit that was created <u>after</u> his termination.   717 F. Supp. at 232 (plaintiff "was discharged six months prior to vesting in Chase's voluntary retirement plan").   The other cases cited by Defendants are also distinguishable for the same reason: they all involved claims of interference with rights under a benefit plan that had not yet been created or implemented at the time of their termination. *See Weinberg v. Mizuho Capital Markets Corp.*, No. 03 CIV. 2612 (SAS, 2003 WL 22462022, at *6 (S.D.N.Y. Oct. 30, 2003) ("Weinberg, by contrast, was never a participant in the Mizuho Severance Pay Plan."); *Niblo v. UBS Global Asset Mgmt. (Americas) Inc.*, No. 11 CIV. 4447 DAB, 2012 WL 995276, at *5 (S.D.N.Y. Mar. 21, 2012)

("it is not plausible that their motivation in doing so, in whole or in part, was to deny him a payment under a Supplemental Program that had not yet been created."); *Yoran v. Bronx-Lebanon Hosp. Ctr.*, No. 96 CIV. 2179 (PKL), 1999 WL 378350, at *12 (S.D.N.Y. June 10, 1999) ("plaintiff was first given notice of termination by mid–1994, [and] [t]he Hospital first deliberated the VEERP amendment [to pension plan] in May or June of 1995").   Here, as stated above and in sharp contrast to *Kelly*, *Weinber*, *Niblo*, and *Yoran*, Plaintiff expressly alleges that her hours were cut to interfere with, and render her ineligible for, the health insurance benefits <u>that she was already receiving under the Dave & Buster's Plan that was already in existence</u>. *See* Complt ¶ 7, 20, 45, 47.

**POINT II.    THE COMPLAINT ADEQUATELY PLEADS DEFENDANTS' INTENT
TO INTERFERE WITH BENEFITS PROTECTED BY ERISA, NOT
MERELY THE CONSEQUENTIAL LOSS OF BENEFITS FROM AN
UNRELATED ADVERSE EMPLOYMENT ACTION.**

### A.  The Complaint Alleges a Prima Facie Claim Under ERISA § 510

As stated above, to establish a prima facie case under ERISA 510, a plaintiff must show
1) that she is in a protected group, i.e., that she is an employee who has "an opportunity to attain
rights in a covered benefit plan"; 2) the she was qualified for her position; and 3) that she was
discharged or denied work "under circumstances that give rise to an inference of discrimination."
*Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114-15 (2d Cir. 1988).  "An essential element
of plaintiff's proof under the statute is to show that an employer was at least in part motivated by
the specific intent to engage in activity prohibited by § 510." *Id.* at 1111.  "This standard does
not require the plaintiff to show that interference with ERISA rights was the sole reason for his
discharge, but it does require him to show more than the incidental loss of benefits as a result of
a discharge." *Gandelman v. Aetna Ambulance Serv., Inc.*, 48 F. Supp. 2d 169, 172-174 (D. Conn.
1999).

Plaintiff can establish the elements of a prima face claim of interference under ERISA
510.  First, Plaintiff alleges that she was a participant in the Dave & Buster's Plan, which is an
already-existing ERISA health insurance plan sponsored by Dave & Buster's.  Complt ¶ 7, 20,
45.  Second, Plaintiff alleges that she was qualified for her position.  Complt ¶ 18, 19, 46.  Third,
Plaintiff alleges that her hours were reduced under circumstances that give rise to an inference
that the reduction in her hours was done with the intent to cut her health insurance.  Specifically,
Plaintiff alleges that she was subjected to a nationwide effort by Defendants in 2013 to 'right
size' the number of full-time employees, thus permitting Defendants to avoid costs associated

with the ACA.  As a result, like other putative class members, Plaintiff had her work hours cut, which resulted in the denial of continued coverage under the Dave & Buster's Plan.  Complt ¶ 10.  Plaintiff alleges that Defendants "reduced work hours for Plaintiff and the class to under 30 hours per week with the intent and the purpose, in whole or part, of interfering with their attainment of their rights as participants under the Dave & Buster's Plan." Complt ¶ 47. Plaintiff also alleges that "[a]s a result of the reduction of employee hours in accordance with the nationwide effort to 'right size' the number of full-time employees who participated in the Dave & Buster's Plan, Plaintiff and the class lost the health insurance benefits they had under the Dave & Buster's Plan."  Complt ¶ 48.  Plaintiff also alleges that "[a]s a result of the reduction of employee hours in accordance with the nationwide effort to "right size" the number of full- time employees who participated in the Dave & Buster's Plan, Plaintiff and the class lost wages and benefits." Complt ¶ 49.  Finally, Plaintiff alleges that "[b] y converting Plaintiff and the class from full-time to part-time status, Defendants interfered with the attainment of their rights to participate in the Dave & Buster's Plan in violation of §510 of ERISA, 29 U.S.C. §1140." Complt ¶ 51.

Plaintiff has alleged, and Defendants do not deny, that Plaintiff's hours were reduced and she was reclassified from a full-time employee to a part-time employee for the very purpose of saving on the cost of health insurance benefits.  Employers' attempts to reclassify their employees' employment status "in order to save the cost of benefits" has been found to violate ERISA § 510. *See Seaman v. Arvida Realty Sales*, 985 F.2d 543, 547 (11th Cir 1993)("Arvida did not change the terms of its plan; rather, it threatened to terminate its salespeople unless they agreed to become independent contractors, performing the same job but ineligible to receive the benefits previously offered to them as employees.")

Based upon the above allegations, and the other allegations in Plaintiff's Complaint, Plaintiff has established a prima facie claim under ERISA § 510 because she has pleaded that her hours were cut with a specific intent to interfere with the health insurance benefits that she was already receiving under the Dave & Buster's Plan.

**B.      Plaintiff Adequately Alleges that Defendants Reduced Her Hours with the Specific Intent to Interfere with Her Existing Benefits**

After pages of attempting to misconstrue Plaintiff's claim as alleging interference with future, speculative rights, Defendants alternatively argue that "if the allegation refers to 'the intent and the purpose ... of interfering with ... attainment of rights' in existence at the time of the reduction in hours, it is insufficient to state a claim as a matter of law, because the Complaint provides no factual support at all for a claim that D&B intended to deprive plaintiff of any rights under D&B's then-existing plan in 2013." Defs' MOL at 16. To the contrary, Plaintiff's claim is supported by the allegations that Defendants announced a plan to reduce the number of full-time employees to address health insurance costs, Complt ¶ 26, 28; then Defendants began cutting the hours of Plaintiff and other employees, Complt ¶ 29, 31; Plaintiff's and other employees' hours were cut to the point that they were no longer full-time employees and were no longer eligible for health-insurance benefits, Complt ¶ 29, 31, 32, 34; and Defendants informed Plaintiff that she no longer qualified for health insurance coverage because she did not work enough hours to be classified as a full-time employee and terminated her health insurance coverage. Complt ¶ 34, 35, 36.

Thus, although Plaintiff clearly alleges a specific intent to interfere with existing benefits, Defendants appear to argue that, even if alleged, such allegation does not have factual support and the Court should find such allegation implausible. However, if Defendants did not have an

intention to render Plaintiff ineligible for her current health insurance benefits, and their only purposes was to avoid future ACA benefit costs, they could have cut her hours but continued to provide her with current health insurance she had been receiving, prior to the ACA-mandate becoming effective, which they did not do. Defendants also could have left Plaintiff as a full-time employee and taken away health insurance benefits from all full-time employees, which they also did not do.

Taken together, the above allegations provide sufficient factual support for Plaintiff's claim that Defendants acted with specific intent to interfere with her existing benefits at this stage of the proceeding. *See Local 812 GIPA v. Canada Dry Bottling Co.,* Nos. 98 Civ. 3791, 98 Civ. 6774, 1999 U.S. Dist. LEXIS 7174, 28-30 (S.D.N.Y. May 10, 1999)(denying MTD; "Plaintiffs need not produce evidence of defendant's intent to violate ERISA § 510 at the pleading stage or in opposition to a Rule 12(b)(6) motion."); *Zahler v. Empire Merchs., LLC*, No. 11-CV-3163, 2012 U.S. Dist. LEXIS 11367 (E.D.N.Y. Jan. 31, 2012)("at this initial pleading stage, where Zahler need only allege facts that render it plausible that Empire was at least partially motivated by an intent to interfere with Zahler's pension rights in terminating her, dismissal of her claim under § 510 of ERISA is inappropriate."); *Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 147-149 (E.D.N.Y. 1996)("plaintiff does not have to use magic words indicating intent but only has to use language which gives rise to an inference of intent, an element that can be explored in more detail during the discovery stage of the litigation.").

Defendants also argue that "the plaintiff does not allege even circumstantial facts suggesting any connection between the change in her hours and her receipt of benefits under the existing plan." Defs' MOL at 18. On the contrary, Plaintiff alleges that "[b]y letter dated March 10, 2014, Dave & Buster's officially notified Ms. Marin that she no longer qualified for coverage

14

under Dave & Buster's Plan because Dave & Buster's required its workers 'to average at least 28 hours per week to be classified as a full-time employee and to be eligible for full-time medical and vision benefit plans,' and Ms. Marin's average hours worked from September 1, 2013 through February 28, 2014, were '17.43 hours per week.'" Complt ¶ 34.  Plaintiff also alleges, "As a result of the reduction of employee hours in accordance with the nationwide effort to "right size" the number of full-time employees who participated in the Dave & Buster's Plan, Plaintiff and the class lost the health insurance benefits they had under the Dave & Buster's Plan." Complt ¶ 49.  Thus, Plaintiff does adequately allege that the reduction in her hours had the effect of ending her receipt of benefits under the Dave & Buster's Plan.

The cases cited by Defendants for the proposition that "courts in this Circuit have dismissed complaints that provide no factual support for a bare allegation of intent to deny benefits" are inapposite. *See* Defs' MOL at 17, citing *Haight v. NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 4993, 2014 WL 2933190, 2014 U.S. Dist. LEXIS 88117, at *7 (S.D.N.Y. June 27, 2014); and *Clapp v. Greene*, 743 F. Supp. 273 (S.D.N.Y. 1990).  In *Haight*, the court found that "Here, the Complaint does not allege sufficient facts to state a plausible claim that NYU's motive in terminating Plaintiff was to keep her from receiving her pension benefits. The Complaint simply states in a conclusory manner that NYU intended to deprive Plaintiff of ERISA protected benefits and alleges that she was fired shortly before the vesting of her pension." *Haight*, 2014 U.S. Dist. LEXIS 88117, *43.  In *Clapp*, the court found that "Plaintiff claims that her expulsion from the firm interfered with her rights under ERISA by preventing her from continuing to be enrolled in LLL & M's pension benefit and health and medical plans. n2 However, plaintiff's claim that had she remained as a partner, she would have accrued additional benefits is not cognizable under § 510." *Clapp*, 743 F. Supp. at 276.

15

It is noteworthy that many other courts have limited *Clapp* to its own facts. *See Ehrlich v. Howe*, No. 92 Civ. 1079, 1992 U.S. Dist. LEXIS 18269 (S.D.N.Y. Nov. 30, 1992)("In *Clapp*, plaintiff alleged denial of benefits <u>as a consequence, but not cause</u>, of her termination, and set forth no facts that would support an inference of unlawful motivation."); *Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 147-149 (E.D.N.Y. 1996)("In *Clapp*, although plaintiff stated in her complaint that her discharge was for a discriminatory purpose, the thrust of her position was that her alleged denial of benefits came <u>as a consequence, but not cause</u>, of her termination. Moreover, the plaintiff in *Clapp* failed to set forth facts that could support an inference of unlawful motivation.")(internal citations omitted)(emphasis added); *Local 812 GIPA v. Canada Dry Bottling Co.*, Nos. 98 Civ. 3791, 98 Civ. 6774, 1999 U.S. Dist. LEXIS 7174, 28-30 (S.D.N.Y. May 10, 1999) ("Although the court in *Clapp v. Greene*, 743 F. Supp. 273 (S.D.N.Y. 1990) dismissed the complaint on a Rule 12(b)(6) motion, its decision was based in large part on the fact that plaintiff's claim that, "had she remained a partner, she would have accrued additional benefits" was not cognizable under ERISA § 510.").

Defendants also argue that "[t]he allegations in paragraph 47 of the Complaint – if construed to refer to alleged rights in existence at the time of the reduction in hours – parallels those held insufficient in *Haight* and *Clapp*." Defs' MOL at 18. As an initial matter, just as the courts in *Haight* and *Clapp* considered more than one paragraph of allegations in evaluating the claims before them, Plaintiff's claim should be evaluated in light of all of her allegations, not just paragraph 47. Moreover, paragraph 47 of the Complaint is hardly conclusory, because it makes the following detailed factual allegations: "Beginning in or about June 2013, Defendants, pursuant to a nationwide effort to 'right size' the number of full-time employees who participated in the Dave & Buster's Plan, reduced work hours for Plaintiff and the class to under

30 hours per week with the intent and the purpose, in whole or part, of interfering with their attainment of their rights as participants under the Dave & Buster's Plan."

In summary, Plaintiff has established a claim under ERISA § 510 because she has adequately alleged that Defendants reduced her hours with the specific purpose and intent of interfering with her rights to health insurance benefits under the existing Dave & Buster's Plan.

**POINT III.   THE ACA IS ONLY A BACKGROUND MOTIVATION THAT PROVIDES EVIDENCE OF DEFENDANTS' SPECIFIC INTENT TO CUT PLAINTIFF'S HOURS TO RENDER HER INELIGIBLE FOR CURRENT BENEFITS.**

**A.      Plaintiff Does Not, and Need Not, Allege a Right to ACA-Compliant Benefits**

Defendants argue that "neither ERISA nor the ACA creates any right to ACA-compliant health coverage, so no claim can lie for alleged 'interference' with such purported statutory right." Defs' MOL at 11.  Irrespective of its truth or falsity, the argument is a red herring.  It is true that employers are not required by ERISA or the ACA to provide health insurance benefits, and therefore, employees do not have a right to receive such benefits.  Therefore, an employer is generally free to have no health insurance at all or to cancel its existing health insurance benefits. *See Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Railway Co.*, 520 U.S. 510 (1997) (absent an employer's contractual ceding of its rights, the employer remains free under ERISA, for any reason at any time, to adopt, modify, or terminate its welfare plan).  However, once an employer decides to provide health insurance benefits, it must comply with the applicable sections of ERISA. *See Hartline v. Sheet Metal Worker's Nat'l Pension Fund*, 134 F. Supp. 2d 1, 19-20 (D.D.C. 2000) ("ERISA section 510 does not restrict an employer's right to amend a plan as to all participants, even to eliminate future benefits. Instead, it restricts an employer's ability to curtail the rights of some employees vis-a-vis other employees for a

17

discriminatory purpose."). Specifically, pursuant to ERISA § 510, an employer may not take an employment action against an employee for the purpose of interfering with the employee's benefits. *See id.*; 29 U.S.C. §1140.

Here, Plaintiff does not assert a right to ACA-compliant benefits, and does not allege interference with a right to ACA-compliant benefits. Rather, she alleges interference with the benefits to which she was already entitled and receiving as a participant in the Dave & Buster's Plan. Defendants argue that "The Complaint asserts, in the Claim for Relief, that D&B reduced plaintiff's hours and those of putative class members to interfere with their attainment of their rights under 'the Dave & Buster's Plan' (¶ 47), a term the Complaint uses to refer to *both* a putative ACA-compliant plan to which plaintiff seeks to be 'restored' (Cplt. At 11) *and* a plan in which plaintiff and putative class members 'were participants' in 2013 (¶ 7)." Defs' MOL at 16. In fact, throughout the Complaint, Plaintiff uses the term "the Dave & Buster's Plan" (emphasis added) to refer to the existing health insurance plan in which she was a participant. *See* Complt ¶¶ 7, 9, 10, 20, 21, 31, 35, 36, 44, 45, 47, 48, 49, 50, and C.

Only in the Prayer for Relief, not in the factual allegations, does Plaintiff use the term "a Dave & Buster's Plan that complies with the requirements of the ACA." Complt at 11, ¶ A (emphasis added). Specifically, Plaintiff's Prayer for Relief simply seeks an order "to immediately reinstate Plaintiff and the class to full-time positions and to restore their rights of participation in a Dave & Buster's Plan that complies with the requirements of the ACA. "Complt at 11, ¶ A. This one-time reference to "a Dave & Buster's Plan that complies with the requirements of the ACA" refers only to a hypothetical or future plan that may exist by the time Plaintiff and the class members receive a remedy of reinstatement to their full-time positions and are again entitled to health insurance coverage from Dave & Busters by virtue of being full-time

18

employees. This is an inference that must be resolved in Plaintiff's favor on a motion to dismiss, as the non-moving party. Moreover, courts have held that the prayer for relief is not demurrable, inasmuch as it does not sustain the action. *See Erie City Iron Works v. Thomas*, 139 F. 995, 996 (C.C.S.D.N.Y. 1905).

Moreover, the fact that the term "the Dave & Buster's Plan" is intended to refer to the existing health insurance plan in which Plaintiff was already a participant is further supported by Plaintiff's allegations that she was "denied <u>continued</u> coverage under the Dave & Buster's Plan," Complt ¶ 10 (emphasis added); she "<u>no longer qualified</u> for coverage under Dave & Buster's Plan" Complt ¶ 34 (emphasis added); "her <u>current coverage</u> in the Dave & Buster's Plan" Complt ¶ 35 (emphasis added); and "<u>continued to participate</u> in the Dave & Buster's Plan." Complt ¶ C (emphasis added). Thus, Plaintiff clearly alleges interference with her rights under the existing Dave & Buster's Plan in which she was a participant, not interference with rights to an ACA-compliant plan that was not yet in existence.

Therefore, Defendants correctly recognize that "[t]he Complaint does not allege a failure of any D&B plan to comply with minimum requirements of ERISA; it asserts only a claim under § 510, which concerns only employment actions that interfere with an employee's exercise or attainment of benefits." Defs' MOL at 12. Plaintiff does not allege or state a claim that the Dave & Buster's Plan in which she was a participant and received benefits was not compliant with the ACA; instead, she alleges that Defendants cut her hours to interfere with her rights to continued participation in that <u>existing plan</u>.

**B.**   **The ACA is Only Defendants' Background Motivation for Its Intent to Interfere With Plaintiff's Benefits And Is Not Determinative**

Defendants argue that "the Complaint does not state a claim for inference with attainment of rights that existed in 2013, because the Complaint unequivocally alleges that the purpose behind the reduction in hours was something different from interference with such rights – *i.e.,* to avoid anticipated future costs associated with providing benefits that did not yet exist." Defs' MOL at 11. In fact, the Complaint alleges that the intent and purpose behind the reduction in her hours was to render her (and other employees) ineligible for their current health benefits. Specifically, Plaintiff alleges that "[i]n August 2013, in accordance with Dave & Buster's effort to 'right size' the number of full-time employees who participated in the Dave & Buster's Plan, Ms. Marin's supervisors further reduced her hours to less than 20 hours each week." Complt ¶ 31 (emphasis added). Plaintiff also alleges that "[b]eginning in or about June 2013, Defendants, pursuant to a nationwide effort to 'right size' the number of full-time employees who participated in the Dave & Buster's Plan, reduced the work hours for Plaintiff and the class to under 30 hours per week with the intent and the purpose, in whole or part, of interfering with their attainment of rights under the Dave & Buster's Plan." Complt ¶ 47(emphasis added). Thus, Plaintiff alleges that Defendants acted with the intent and purpose of interfering with her existing rights under the current plan.

Plaintiff's Complaint does include allegations regarding Defendants' desire to avoid or reduce anticipated future costs of providing ACA-compliant benefits. *See* Complt ¶ 10, 24, 26, 28, 30, 39.    However, these allegations provide circumstantial or background evidence supporting an inference that Defendants acted with the intent to interfere with Plaintiff and the putative class' existing health insurance benefits.   The fact that Defendants were admittedly

20

concerned with managing their health insurance costs helps support the conclusion that they reduced Plaintiff's hours with the intent to end her eligibility for the health insurance she had at the time.  Allegations of cost savings may be considered as circumstantial evidence supporting an inference of intent to interfere with benefits.  *See Quinby v. WestLB AG*, No. 04 Civ. 7406, 2007 U.S. Dist. LEXIS 28657, 42-45 (S.D.N.Y. Apr. 19, 2007)(denying MSJ because "it is undisputed that Plaintiff was terminated a mere two weeks before her pension was to vest. Combined with the inevitable cost savings to WestLB, that is sufficient to establish an inference of discrimination"); *Eichorn v. AT & T Corp.*, 248 F. 3d 131, 149, 150 n.9 (3d Cir. 2001)(noting that "measures designed to reduce costs in general that also result in an incidental reduction in benefits expenses do not suggest discriminatory intent," but finding that the plaintiffs had "produced sufficient evidence that both AT&T and Lucent received a direct and substantial financial gain from the cancellation of pension benefits, namely they were relieved from paying large sums for the pension benefits...."); *Crawford v. TRW Auto. U.S. LLC*, No. No. 06-14276, 2007 U.S. Dist. LEXIS 78755, 12-19 ( E.D. Mich. Oct. 24, 2007)("In support of their prima facie case, Plaintiffs present company documents in which TRW recognizes the need to reduce its legacy costs. .... The Sixth Circuit has stated that '[a] plaintiff's burden in establishing a prima facie case is not intended to be an onerous one.' With that guideline in mind, this Court concludes that Plaintiffs present sufficient evidence to demonstrate a prima facie case under Section 510. A trier of fact could reasonably infer from Plaintiffs' evidence that TRW closed the Van Dyke Plant to interfere with employees' attainment of retirement benefits.")(internal citation omitted).

Thus, the reason behind why Defendants wanted to render Plaintiff and other employees ineligible for their current health benefits is at most circumstantial evidence to help prove that

21

their intent in reducing Plaintiff's hours was to render the employees ineligible for their current health benefits (rather than, for example, to cut overtime costs or to achieve some scheduling efficiency).   By focusing exclusively on the allegations regarding Defendants' desire to avoid or reduce anticipated future costs of providing ACA-compliant benefits, Defendants are self-servingly and improperly substituting the background reason (avoiding future ACA costs and reducing health insurance costs generally) for the immediate purpose and intent (rendering Plaintiff ineligible for her existing health insurance) behind their actions (reducing Plaintiff's hours).

**POINT IV.   "TARGETING" IS NOT AN ELEMENT OF AN ERISA § 510 CLAIM**

Defendants argue that "[t]he Complaint fails for yet another reason: it does not plead facts, as it must, showing that plaintiff or putative class members were targeted for adverse employment action based on any ERISA-related characteristic special to them." Defs' MOL at 18.  However, targeting is not an element that must be pleaded to state an ERISA § 510 claim. *See* Point I.B above.  Plaintiff states a claim under ERISA § 510 because she alleges that Defendants reduced her hours to interfere with her current health insurance benefits.  *See Cioinigel v. Deutsche Bank Ams. Holding Corp.*, No. 12 Civ. 434, 2013 U.S. Dist. LEXIS 4689 (S.D.N.Y. Jan. 10, 2013)(A plaintiff "states a claim under section 510 if he alleges that defendant interfered with his employment relationship with the intent of preventing him from obtaining his … benefits (or otherwise interfering with his rights under ERISA).")  Plaintiff is not required to show that she and the other employees whose hours were cut have some benefits-related characteristic that differs from those employees whose hours were not cut.  To make an analogy to Title VII discrimination cases, which are subject to the same analysis as ERISA § 510 claims, an employee who can prove that she was terminated because she is a woman does not also need

to prove that other similarly situated women were also terminated in order to state a claim of discrimination. If alleging targeting based upon a benefits-specific characteristic unique to the plaintiff (and the putative class) were required in order to state an ERISA § 510 claim, any employer could avoid liability by interfering with the benefits of a significant number of employees by taking employment action against them, as long as it refrained from taking the same action against at least some other similarly situated employees with that same benefits-related characteristic.

Moreover, although Defendants assert that "[t]he statutory and legislative history, as well as the case law, establish that section 510 was intended to apply to actions targeted to particular individuals...", Defs' MOL at 18, their entire argument that a plaintiff must plead that she was "targeted" relies upon a single, inapposite, non-binding case, *Andes v. Ford Motor Co.*, 70 F.3d 1332 (D.C. Cir. 1995). *See* Defs' MOL at 18-22. The *Andes* case concerned an ERISA § 510 claim by employees who claimed that Ford's decision to sell its DCS subsidiary was motivated by "the purpose of preventing those employees from ultimately qualifying for early retirement benefits" 70 F.3d at 1336. However, the court in *Andes* relied heavily upon facts that contradicted that defendant's alleged intent to interfere with benefits, including the fact that "employees at DCS were apparently younger with fewer years of service than the typical Ford employee, making it improbable that this division would be sold in order to avoid early retirement benefits." 70 F.3d at 1336.

The *Andes* court's holding is not even persuasive here in this jurisdiction because the Second Circuit has not followed or adopted its apparent requirement that an ERISA § 510 plaintiff must show "targeting." The *Andes* court noted that five of the six circuit courts to have addressed the question whether a corporate organizational change, such as a decision to sell a

23

subsidiary, violated § 510 have easily rejected such claims <u>at the summary judgment stage</u>. *See Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir. 1993*); Unida v. Levi Strauss & Co.*, 986 F.2d 970 (5th Cir. 1993); *Varhola v. Doe*, 820 F.2d 809 (6th Cir. 1987) (alleged § 510 discrimination between groups of employees); *West v. Greyhound Corp.*, 813 F.2d 951 (9th Cir. 1987); *Aronson v. Servus Rubber, Div. of Chromalloy*, 730 F.2d 12 (1st Cir.) (alleged § 510 discrimination between groups of employees), cert. denied, 469 U.S. 1017, 83 L. Ed. 2d 357, 105 S. Ct. 431 (1984); but *see Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d Cir.), cert. denied, 484 U.S. 979, 98 L. Ed. 2d 492, 108 S. Ct. 495 (1987) (holding, after examining the evidence adduced at a bench trial, that a company's decision to close down a production line, among other actions, constituted a violation of § 510)." 70 F.3d at 1336-37 (emphasis added).  Thus, not only were all of these cases decided by circuits other than the Second Circuit, but they were all decided at the summary judgment stage (or after a full trial).  It is also worth noting that the *Andes* case has not been cited or relied upon by any courts within the Second Circuit (except for *Lechleiter v. P&G Distrib. Co.*, No. 3:01CV2200, 2002 U.S. Dist. LEXIS 8054 (D. Conn. Mar. 27, 2002), which focused solely the *Andes* court's holding with regard to ERISA 204(g), not ERISA § 510).

Other courts have also distinguished the *Andes* decision and found that its holding was based upon the facts of that case.  For example, the court in *Crawford v. TRW Auto. U.S. LLC*, No. 06-14276, 2007 U.S. Dist. LEXIS 78755, 13-14 ( E.D. Mich. Oct. 24, 2007), held that "the courts' rejection of the plaintiffs' claims in [*Andes* and a Sixth Circuit case] was premised instead on the absence of evidence of an intent by the defendants to interfere with the employees' ERISA rights. In fact the D.C. Circuit specifically stated in *Andes* that, under certain circumstances, Section 510 could be implicated by a company's basic organizational decision (e.g. shutting

24

down a particular plan or division). 70 F.3d at 1338 (explaining that a company's decision to shut down a subdivision where most employees soon to be eligible for a rich benefits package worked may 'merely mask[] a determination to interfere with the employees' attainment of benefit plan rights')   .... The Court concludes that an employer's decision to close a plant, although not always actionable under Section 510, is actionable if a motivating factor for the employer's decision is its desire to interfere with employees' attainment of ERISA benefits."

Moreover, a primary focus of the *Andes* decision was whether the term "discharge" applied to a sale of a corporate subsidiary and consequential layoff of the employees of that subsidiary. Here, the adverse employment alleged is not "discharge," but a reduction in hours, which is nevertheless an adverse action under ERISA § 510. The court in *Tavoloni v. Mount Sinai Med. Ctr.*, 984 F. Supp. 196, 207 (S.D.N.Y. 1997) found that the plaintiff stated a claim under ERISA § 510 based upon the allegation "that defendants cut plaintiff's salary for the purpose of reducing the benefit level that he otherwise would attain." The court reasoned, "To begin with, while Section 510 certainly covers a termination the object of which is to prevent an employee's pension rights from vesting, it is not so limited by its terms. The statute prohibits discipline and discrimination in addition to discharge. The legislative history, moreover, supports the view that Congress intended to protect employees from adverse employment action motivated by a desire to interfere with the attainment of rights under qualified employee benefit plans. ... Surely substantial salary cuts and other harassment, if intended to force an employee to quit for the purpose of preventing the employee from vesting, would run afoul of the statute." Thus, the *Andes* decision is distinguishable, and its requirement that a plaintiff plead she was "targeted" is not applicable here, because the *Andes* case involved a sale of a subsidiary, which

25

may not be actionable under ERISA § 510, and the instant case involves a reduction in employees' hours, which does constitute an adverse action under ERISA § 510.

Lastly, Defendants' argument regarding a targeting requirement for pleading an ERISA § 510 claim must be rejected because it violates the principles of ERISA. If Defendants were correct that an employee has to allege that she was targeted based upon a benefits-specific characteristic unique to her in order to state a claim under ERISA § 510, an employer could simply take an adverse employment action to interfere with the benefits of some, but not all, of a group of similarly situated employees, so that it could argue that it has not "targeted" the employees who were subject to the adverse action, and thereby avoid liability under ERISA § 510. That is exactly what Defendant is arguing here and is another reason why Defendants' motion should be denied.

**POINT V.   ERISA § 510 CLAIMS SHOULD NOT BE DECIDED ON A MOTION TO DISMISS**

Finally, Defendants' motion to dismiss should be denied because Plaintiff has pleaded sufficient allegations to state a claim under ERISA § 510. Courts have held that interference claims under ERISA § 510 should not be decided on a motion to dismiss. *See Vallone v. Banca Nazionale del Lavoro*, Nos. 02 Civ. 6064, 02 Civ. 7102, 2004 U.S. Dist. LEXIS 25252, 5-6 (S.D.N.Y. Dec. 7, 2004)("It may well be that Plaintiffs cannot produce sufficient evidence that Defendants acted with the improper motive required under § 510. If so, I have no doubt that it would be appropriate to grant summary judgment for Defendants. ... However, a motion to dismiss is the wrong forum for arguing the factual question of what motivated the terminations. At this stage Plaintiffs' allegations of improper motive suffice."); *Local 812 GIPA v. Canada Dry Bottling Co.*, Nos. 98 Civ. 3791, 98 Civ. 6774, 1999 U.S. Dist. LEXIS 7174 (S.D.N.Y. May 10, 1999)("Plaintiffs need not produce evidence of defendant's intent to violate ERISA § 510 at the

pleading stage or in opposition to a Rule 12(b)(6) motion. With one exception, all of the cases cited by [the defendant] involve motions for summary judgment, upon which it would be appropriate to require plaintiff to submit some evidence of intent."); *Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 147-149 (E.D.N.Y. 1996) ("courts have noted that because New York law permits an employer to fire a noncontractual employee at-will, while ERISA restricts that freedom by providing that the employer's intent must not be discriminatory, 'the employee is left the very difficult task of proving that he was fired at least partly to avoid the vesting of his pension benefits.' Because of this arduous undertaking, courts that have denied a defendant's motion to dismiss in similar circumstances have reasoned that the plaintiff is entitled to engage in discovery to gather the evidence required to support his claim in order for the trier of fact to determine whether or not plaintiff was discharged improperly.")(internal citation omitted).

Many courts in this district have denied motions to dismiss in ERISA § 510 interference cases. *See Zahler v. Empire Merchs., LLC*, No. 11-CV-3163, 2012 U.S. Dist. LEXIS 11367 (E.D.N.Y. Jan. 31, 2012)("at this initial pleading stage, where Zahler need only allege facts that render it plausible that Empire was at least partially motivated by an intent to interfere with Zahler's pension rights in terminating her, dismissal of her claim under § 510 of ERISA is inappropriate."); *Fraser v. Fiduciary Trust Co. Int'l*, No. 04 Civ. 6958, 2005 U.S. Dist. LEXIS 48059, 38-39 (S.D.N.Y. June 23, 2005)(denying MTD because "Plaintiff's allegations that the Individual Defendants 'were determined to prevent Plaintiff from receiving existing and future benefits from [certain] ERISA-governed Plans' and that he was terminated 'to avoid the payment of contractual benefits' are sufficient to state a claim."); *Tavoloni v. Mount Sinai Med. Ctr.*, 984 F. Supp. 196, 207 (S.D.N.Y. 1997)("This complaint does not assert that defendants "merely"

27

have taken action that will reduce the amount that plaintiff ultimately will receive. It asserts that the action was taken for the specific purpose of disciplining plaintiff, in a discriminatory manner, in order to force his termination as a tenured faculty member and thus his participation in the MSTSP. It remains to be seen whether plaintiff can prove these allegations. On this motion to dismiss, however, he is entitled to the assumption that they are true. In consequence, the motion to dismiss, insofar as it is addressed to the sixth cause of action, must be denied."); *Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 147-149 (E.D.N.Y. 1996)("In our case, plaintiff has charged each element necessary to recover, and thus the Court cannot grant defendant's motion to dismiss. ... courts that have denied a defendant's motion to dismiss in similar circumstances have reasoned that the plaintiff is entitled to engage in discovery to gather the evidence required to support his claim in order for the trier of fact to determine whether or not plaintiff was discharged improperly."); *Ehrlich v. Howe*, No. 92 Civ. 1079, 1992 U.S. Dist. LEXIS 18269 (S.D.N.Y. Nov. 30, 1992)(denying MTD  "plaintiff has alleged that defendants terminated him in order to prevent his rights from vesting. ... taking the facts alleged in the complaint and consent order in the light most favorable to the plaintiff, plaintiff has made out a prima facie showing of a discharge in violation of § 510. Direct and circumstantial evidence of such intent would require further discovery.")

As in the above-cited cases, Defendants' motion to dismiss should be denied, because Plaintiff has alleged sufficient facts to establish her prima facie case and state a plausible claim under ERISA § 510.

28

## CONCLUSION

For all of the reasons discussed above, Defendants' motion to dismiss should be denied in its entirety, and Plaintiff should be granted such further and other relief as may be deemed just and proper, including leave to amend the pleadings, if necessary.

Dated: September 30, 2015
White Plains, New York

FRUMKIN & HUNTER LLP

By: /s/William D. Frumkin
William D. Frumkin
Elizabeth E. Hunter
1025 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 468-6096

Judith L. Spanier, Esq.
Nancy Kaboolian, Esq.
Abbey Spanier, LLP
212 East 39th Street
New York, New York 10016
(212) 889-3700
jspanier@abbeyspanier.com

Bradford D. Conover, Esq.
Molly Smithsimon, Esq.
Conover Law Offices
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 588-9080
brad@conoverlaw.com

*Attorneys for Plaintiff*

F:\APPLICAT\WP\Dave and Buster's\Opp to MTD.MOL.09.21.15.wpd\